**Allen W. HATCHER, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

**No. 2008–CA–001569–MR.**

Court of Appeals of Kentucky.

March 12, 2010.

As Modified April 23, 2010.

Allen W. Hatcher, West Liberty, KY, pro se.

Jack Conway, Attorney General of Kentucky, Wm. Robert Long, Jr., Assistant Attorney General, Frankfort, KY, for appellee.

Before KELLER and WINE, Judges;

LAMBERT,[1] Senior Judge.

## OPINION

WINE, Judge.

Allen Hatcher, *pro se*, appeals from the denial of a Kentucky Rules of Criminal Procedure ("RCr") 11.42 motion. Hatcher argues on appeal that he received ineffective assistance of counsel because of trial counsel's alleged failure to challenge the jury instructions, to object to amendment of the charges, to adequately investigate the prosecution's witnesses, and to raise double jeopardy as an issue. Upon careful review of the record, we reverse the trial court's order of July 16, 2008, denying Hatcher RCr 11.42 post-conviction relief; vacate Hatcher's conviction and sentence for murder; and remand for a new trial on the charge of murder.

## Background

On the evening of November 6, 2003, Edward Tankersley and Chris Sexton met at a bar where they drank several beers. The pair also smoked marijuana and used cocaine. While at the bar, Tankersley suggested to Sexton that they go to meet a girl he knew. Once the bar closed, the pair traveled to the home of Hatcher in the early hours of the morning of November 7, 2003. Before entering the residence, the pair allegedly "did a line" of cocaine together. Further, Tankersley allegedly asked Sexton, "Have you got my back?" before they entered the residence. As Tankersley knocked on the door of Hatcher's home, Sexton went back to the car to get a beer. Tankersley entered the residence and allegedly began speaking with Paula Beckner—the young lady they had driven to see.

Sexton testified at trial that, upon entering the residence, he observed Tankersley speaking to Beckner. Sexton testified that the pair sat next to a tray containing a large quantity of marijuana. Sexton further testified that he observed Hatcher suddenly appear and yell at Tankersley, "I told you to get out of my house." He testified that Hatcher went to the back room of the residence and re-emerged with a gun. Hatcher allegedly shouted at Tankersley, "I told you to get the f___ out of my house" before shooting him in the leg. Sexton ran out of the house in fear after seeing Hatcher shoot Tankersley. However, fearing for Tankersley, Sexton allegedly ran back to retrieve him. As Sexton was attempting to drag Tankersley from the doorway of the home, he claims that Hatcher walked up and shot Tankersley in the head.

Sexton testified that as he began dragging Tankersley to his vehicle, James Rodney Gross approached and helped him carry Tankersley to the vehicle. He testified that Gross also attempted to give him directions to the hospital. Thereafter, Sexton drove Tankersley to the nearest trailer to get help. The occupants of the trailer called 911, and police were called to the scene. Tankersley died shortly thereafter. Police searched Hatcher's residence within hours of the shooting. They found evidence of the shooting as well as evidence that someone had attempted to clean up the area where Tankersley had been shot. In addition, methamphetamine and over eight ounces of marijuana were found, as well as numerous other items of drug paraphernalia and a methamphetamine precursor.

On December 15, 2003, an Edmonson County Grand Jury indicted Hatcher, Beckner, and Gross for Tankersley's mur-

<hr>

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Jus- tice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

der as well as for several other drug-related charges. All of the indicted offenses stemmed from the events occurring in the early morning hours of November 7, 2003.

At trial, Hatcher, Beckner, and Gross all testified to the events of the evening of November 6, 2003. Their testimony differed in important respects from Sexton's testimony. They testified that Tankersley pushed his way into the house when Gross answered the door, knocking Gross backwards. Gross testified that he had never seen Tankersley before. Hatcher testified that he had not seen Tankersley for about a year and a half since Tankersley allegedly stole some tools from Hatcher's wood shop. Hatcher further testified that he asked Tankersley to leave, but Tankersley said, "I'll go when I'm f___ing ready." Gross testified that Tankersley stated, "You can't make me leave." Hatcher testified that he went to the bedroom to get his gun, returned with the gun, and again told Tankersley to leave. He testified that the first shot he fired from the gun (which hit Tankersley in the leg) was not meant to hit Tankersley—only to scare him into leaving. Both Hatcher and Gross testified that Tankersley was apparently unphased by being shot in the leg.

Hatcher testified that Sexton ran up to the door behind Tankersley and noticed that Tankersley had been shot in the leg. Gross testified that Sexton ran back off the porch after exclaiming that he had firearms in his vehicle and would kill them all and "cut the house in half." Gross and Hatcher both testified that Sexton appeared moments later, running onto the porch again. Hatcher testified he believed that Sexton handed Tankersley a gun at this point and that he then shot Tankersley in self defense.

Gross testified that after initially fleeing the house in fear, he observed Hatcher's

dogs behaving as if they were going to attack Sexton and Tankersley while Sexton was attempting to drag Tankersley to the car. Gross helped Sexton carry Tankersley to the car. He further testified that Beckner gave him towels to use in aiding Tankersley and he wrapped Tankersley's head in towels to slow the bleeding. Gross further testified that Beckner gave him a phone to give to Sexton so that he could call 911. Gross testified that he thought 911 had been called and therefore directed Sexton to begin driving in the direction of the hospital so that he could meet the ambulances on the roadway.

Another witness at trial, Kenneth Bell—a jailhouse informant for the Commonwealth—also testified to the events of that evening. He testified that he became acquainted with Hatcher in jail and that Hatcher told him that he shot Tankersley because of a dispute over money, claiming Tankersley owed him money from a prior drug transaction. Bell testified that Hatcher never mentioned he was acting in self-protection or that he believed Tankersley had a gun.

The jury convicted Hatcher of murder, trafficking in marijuana (more than eight ounces), possession of drug paraphernalia while in possession of a firearm, possession of a methamphetamine precursor while in possession of a firearm, tampering with physical evidence, and trafficking in a controlled substance while in possession of a firearm. The jury recommended a total sentence of thirty years' imprisonment, which was imposed by the Edmonson Circuit Court.

Hatcher appealed as a matter of right to the Kentucky Supreme Court, and the judgment was affirmed on August 24, 2006. Hatcher then initiated federal *habeas* proceedings in the Western District of Kentucky. The District Court found that Hatcher had failed to exhaust his state

court remedies and is currently holding the matter in abeyance for Hatcher to pursue post-conviction relief in state court (prompting the action herein). On May 8, 2008, Hatcher filed an RCr 11.42 motion with the trial court. The motion was denied by the trial court on July 16, 2008. Hatcher now appeals from the denial of his RCr 11.42 motion.

### Analysis

On appeal Hatcher argues that his trial counsel's performance was deficient because of counsel's alleged failure (1) to challenge the indictment; (2) to adequately investigate the prosecution's witnesses; (3) to raise a double jeopardy challenge; and finally, (4) to object to the jury instructions.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient *and* that such deficiency prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *as adopted by Gall v. Commonwealth,* 702 S.W.2d 37 (Ky.1985). Thus, under *Strickland,* the petitioner must show both incompetence and prejudice. The standard for counsel's competence is whether "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. The standard for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

### *Fatal Variance from the Indictment*

First, Hatcher challenges two variances between the indictment and the instructions given to the jury. He contends that there was a "fatal variance" between the murder instruction given to the jury and the murder charge contained in the indictment and that the jury instruction constructively amended the indictment. While the caption on the indictment stated "Murder," citing KRS 507.020, the language in the charging instrument stated as follows:

> COUNT ONE: That on or about November 6, 2003 in Edmonson County, Kentucky, the above-named defendant, Allen Hatcher, alone or in complicity with Paula Beckner and James Gross, committed the offense of Murder, when he *intentionally* caused the death of Edward Tankersley, Jr.

(Emphasis added.)

Hatcher contends that he should not have been tried for wanton murder when the indictment stated that he "intentionally" killed Edward Tankersley. His argument is not well-taken. The language in the indictment put him on notice that he was charged with murder under KRS 507.020. *See e.g., Thomas v. Commonwealth,* 931 S.W.2d 446, 449 (Ky.1996) (*"An indictment is sufficient if it fairly informs the accused of the nature of the charged crime . . ."*). Intentional murder and wanton murder are the same offense under Kentucky law. KRS 507.020. *See also, Schambon v. Commonwealth,* 821 S.W.2d 804, 810 (Ky.1991); and *Evans v. Commonwealth,* 45 S.W.3d 445 (Ky.2001). In addition, pursuant to RCr 6.16, a court may permit an indictment "to be amended any time before verdict or finding if no additional or different offense is charged *and* if substantial rights of the defendant are not prejudiced." (Emphasis added.) No new evidence was required to prove wanton murder. As such, counsel was not ineffective for failing to object to this constructive amendment of the indictment. Furthermore, as we are remanding for a new trial on the murder charge for the

reasons set out below, Hatcher can suffer no prejudice from the variance.

■ Hatcher's second argument alleges that counsel was ineffective for failing to challenge the indictment on the grounds that he was *convicted* of trafficking in marijuana when he was only *indicted* for possession of marijuana. The caption of the indictment stated that Hatcher was being charged with trafficking in marijuana under KRS 218A.1421(3), yet the count in the indictment described the offense as possession rather than trafficking. Although the variance between the offense as charged and the offense presented to the jury is significant, we find that Hatcher was not unfairly prejudiced. To begin, had trial counsel objected to the constructive amendment of the indictment, the Commonwealth could have moved to amend the indictment under RCr 6.16. Indeed, there is no evidence that Hatcher's substantial rights would have been prejudiced by such an amendment as the trafficking charge stemmed from possession of a large enough quantity of marijuana that trafficking was presumed. As such, the facts to prove both were the same. Given the overwhelming evidence concerning drugs in this case, and the fact that the caption in the indictment notified the defendant of the charge, there is no reasonable probability, under the second prong of *Strickland, supra,* that the outcome would have been different.

### Denial of Adequate Investigation

■ Hatcher further argues that he was denied the opportunity to adequately investigate the prosecution's witness when the trial court refused to continue the trial when the Commonwealth waited to disclose a jailhouse informant until roughly one week before trial. However, we fail to see how Hatcher's *trial counsel* was deficient for the *trial court's* refusal to contin-

ue the case. Hatcher concedes in his brief that trial counsel objected to any testimony by Bell, the jail inmate, because the information had been divulged just one week prior to trial. "The granting of a continuance is in the sound discretion of a trial judge, and unless from a review of the whole record it appears that the trial judge has abused that discretion, this court will not disturb the findings of the [trial] court." *Williams v. Commonwealth,* 644 S.W.2d 335, 336–337 (Ky.1982).

This is an issue which Hatcher should have raised on direct appeal, and as such, we do not need to reach this issue herein. *Brown v. Commonwealth,* 788 S.W.2d 500, 501 (Ky.1990); *Thacker v. Commonwealth,* 476 S.W.2d 838, 839 (Ky.1972).

### Double Jeopardy

■ Next, Hatcher claims that he received ineffective assistance of counsel because his trial counsel failed to raise double jeopardy. Hatcher claims that counsel should have realized that the charges for trafficking in marijuana, trafficking in methamphetamine, and possession of a methamphetamine precursor all arose from the same conduct, thus implicating double-jeopardy.

Hatcher's reliance on *Commonwealth v. Grubb,* 862 S.W.2d 883 (Ky.1993) is misplaced. Grubb was convicted of multiple counts of drug trafficking for two drugs of the same schedule where all counts arose from the same transaction. Further, Grubb relies on the "single impulse"/"single conduct" test for double jeopardy adopted in *Ingram v. Commonwealth,* 801 S.W.2d 321 (Ky.1990). The Kentucky Supreme Court has overruled *Ingram* and adopted the "distinct element" test of *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See also Commonwealth v. Burge,* 947 S.W.2d 805 (Ky. 1997). Hatcher was convicted of trafficking in marijuana, more than eight ounces

but less than five pounds (firearm enhanced)(KRS 218A.1421(3)); first-degree trafficking in a controlled substance (firearm enhanced)(KRS 218A.1412); and possession of a methamphetamine precursor (firearm enhanced)(KRS 218A.1437), each requiring proof of different elements and each stemming from the possession of a different substance or precursor (marijuana, methamphetamine, and a methamphetamine precursor), and each involving a different subsection of KRS 218A. Thus, those convictions could not have violated the double jeopardy clause of the Fifth Amendment. Trial counsel was not ineffective for failing to raise a double jeopardy challenge.

### Failure to Challenge Jury Instructions

█ Hatcher's final argument for ineffective assistance of counsel is that trial counsel failed to object to the combination instruction for murder which allegedly contained "mandatory inferred conclusory presumptions," rather than "permissive inferences."

Jury Instruction No. 5, the instruction for murder, read as follows:

You will find the Defendant, Allen Hatcher, guilty of Murder under this instruction, if and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about November 6, 2003, and before the finding of the Indictment herein, he killed Edward Tankersley by shooting him;

AND

B. That in so doing;

(1) He caused the death of Edward Tankersly [sic] intentionally and not

while acting under the influence of extreme emotional disturbance;

OR

(2) He was wantonly engaging in conduct which created a grave risk of Death to Edward Tankersly [sic] under circumstances manifesting an extreme indifference to human life.

AND

C That in so doing he was not privileged to act in self-protection.

The term "wantonly" was separately defined for the jury. However, the phrases "under circumstances manifesting an extreme indifference to human life" and "extreme emotional disturbance" were not defined for the jury. There was no separate instruction or definition for self-protection.

Hatcher argues that the instruction improperly required the jury to infer a presumed fact based upon proof of a predicate fact. He argues that the predicate fact is "wantonness" and that the presumed fact is "under circumstances manifesting extreme indifference." Hatcher alleges that this presumption effectively allowed the jury to evaluate the case under the standard for second degree manslaughter (*wantonness*), yet convict for wanton murder (*wantonness plus extreme indifference*).

Hatcher's argument is without merit. We begin by noting that this instruction is the exact model instruction from Cooper's Kentucky Instructions to Juries.[2] While not binding on our Courts, we have often found this instruction to be persuasive. 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 3.24. Further, our Courts have approved of the use of this same instruction in numerous circumstances, provided there is evidence for both intentional murder and wanton murder. *See,*

---

**2.** The instruction is verbatim except for prong "C," which is not explicitly called for in *Cooper's,* but is, nonetheless, proper under *Allen*

*v. Commonwealth,* 5 S.W.3d 137 (Ky.1999) and *Wallen v. Commonwealth,* 657 S.W.2d 232 (Ky.1983).

*e.g., Parker v. Commonwealth,* 241 S.W.3d 805, 810 (Ky.2007) and *Hudson v. Commonwealth,* 979 S.W.2d 106 (Ky.1998). Moreover, we note that the Kentucky Supreme Court has previously held that it is not error to provide the jury with alternate instructions for both wanton and intentional murder when the defendant is claiming self-protection. *Allen v. Commonwealth,* 5 S.W.3d 137 (Ky.1999). Accordingly, while we find no fault with trial counsel's failure to object to the combination instruction, we reiterate a point which the Kentucky Supreme Court has strongly emphasized—that the *preferred practice* is for the trial court to include a form verdict that allows the jury to state whether they are finding the defendant guilty of intentional murder or wanton murder.[3] *Benjamin v. Commonwealth,* 266 S.W.3d 775, 785 (Ky.2008). *See also, Hudson v. Commonwealth, supra.* Such separate verdict forms are especially appropriate when, as in this case, the evidence arguably may not support either intentional or wanton conduct.

We now turn to Hatcher's next argument, that counsel failed to object to the jury instructions on the grounds that they did not include a definition or separate instruction for extreme emotional disturbance ("EED") or self-protection. We agree that when a murder instruction includes a reference to EED, the jury *must* be given a definition of extreme emotional disturbance to accompany that instruction. *See, e.g.,* 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 3.21 (*Comment Section*). Otherwise (as occurred in the present case), the jury is left to determine whether a defendant did or did not act under such disturbance without any legal ground upon which to base such determination. As such, counsel should have objected to the murder instruction because it stated the defendant could not be found guilty of murder if he were operating under EED but then failed to define the term for the jury.[4] Further, we agree that self-protection should have been defined by a separate instruction, as the jury was left to determine whether Hatcher acted in self protection with no legal basis upon which to decide the question.[5]

Further, Hatcher argues that his counsel was deficient for failing to request an instruction on *imperfect* self-protection. This argument concerns the "wanton or reckless belief qualification" to a defendant's subjective belief in the need for self-protection as described in *Commonwealth v. Hager,* 41 S.W.3d 828, 841 (Ky.2001). Namely, Hatcher contends that counsel was deficient for failing to demand an instruction on both perfect and imperfect self-protection.

3.  However, although this issue was not raised by Hatcher in this action, the Kentucky Supreme Court has directed that when wanton murder is instructed upon, there must also be an instruction on second-degree manslaughter as a lesser included offense. *Parker, supra.* It does appear that counsel should have objected to the failure to instruct upon second-degree manslaughter.

4.  Moreover, as a combination instruction was used for intentional and wanton murder, the jury should have been instructed that EED is not applicable to wanton murder, but only to intentional murder, as EED is not a mitigating element to crimes having a *mens rea* of wantonness. *See, e.g., Todd v. Commonwealth,* 716 S.W.2d 242, 246 (Ky.1986).

5.  Importantly, as the jury was never advised that self-protection is to be analyzed from a defendant's *subjective* perspective, the jury may well have determined that Hatcher did not act in self-protection based upon their own interpretation of whether the belief was *objectively* reasonable. This is but one of many mistakes the jury could have made in determining whether Hatcher acted in self-protection, given that they were provided absolutely *no* guidance as to how to analyze whether Hatcher acted in self-protection.

It is a bedrock principle of law in this Commonwealth that the trial court must instruct the jury on "the [whole] law of the case," including every theory of the case deducible therefrom. RCr 9.54(1). *See also, Lee v. Commonwealth*, 329 S.W.2d 57, 60 (Ky.1959) and *Manning v. Commonwealth*, 23 S.W.3d 610, 614 (Ky. 2000). Indeed, a criminal defendant is entitled to have the jury instructed on self-protection if it is "supported to *any* extent by the testimony." *Thomas v. Commonwealth*, 170 S.W.3d 343, 349 (Ky.2005) (*Emphasis added*). Additionally, we reiterate the long-standing principle that the doctrine of self-protection turns upon a defendant's *subjective belief* of the need to use force, rather than the trial court's interpretation of whether such a belief was objectively reasonable. *See, e.g., Hayes v. Commonwealth*, 870 S.W.2d 786, 787–88 (Ky.1994), and *Commonwealth v. Hager*, 41 S.W.3d at 842. *See also* Kentucky Revised Statute ("KRS") 503.050. As such, the argument advanced by the Commonwealth that Hatcher was not entitled to a separate self-protection instruction because there was "little evidence" of self-protection, or that the only evidence of self-protection was the testimony of Hatcher and his two co-defendants, is unpersuasive.

Further, we note that although self-protection turns on the defendant's subjective belief in the need to use force, a defendant may be *mistaken* in his belief that force is required. *Hager, supra.* Indeed, a defendant may be so sorely mistaken in his belief in the need to use force that his mistaken belief *itself* may "constitute wantonness or recklessness with respect to the circumstance then being encountered." *Id.* at 842. This is precisely the "wanton or reckless belief" qualification to a defendant's belief in the need for self-protection that is discussed in *Hager.* In situations where such a belief is wantonly or recklessly held, self-protection is unavailable as a defense to all offenses having a *mens rea* of wantonness or recklessness. KRS 503.120(1). *See also, Elliott v. Commonwealth*, 976 S.W.2d 416, 422 (Ky.1998), *and Hager, supra.* In these situations, however, self-protection can still be used to negate an intentional mental state, such as that required for intentional murder. *Id. See also*, Abramson, *Kentucky Practice*, Vol. 10, Substantive Criminal Law, 2d Ed., 2000 (Pocket Part § 5.31). Indeed,

> [A]ll KRS 503 justifications, including self-protection, are premised upon a defendant's actual subjective belief in the need for the conduct constituting the justification and not on the objective reasonableness of that belief.... [However], the statute recognizes that a defendant may be mistaken in his belief and that the mistaken belief, itself, may be so unreasonably held as to constitute wantonness or recklessness with respect to the circumstance then being encountered. If so, the statute provides that the justification, *e.g.*, self-protection, is unavailable as a defense to an offense having the mens rea element of wantonness, *e.g.* second-degree manslaughter, or recklessness, *e.g.*, reckless homicide, "as the case may be."
>
> Thus, while a wantonly held belief in the need to act in self-protection is a defense to an offense having the mens rea element of intent, it supplies the element of wantonness necessary to convict of second-degree manslaughter; and while a recklessly held belief in the need to act in self-protection is defense to an offense requiring either intent or wantonness, it supplies the element of recklessness necessary to convict of reckless homicide.

*Id.* at 842 (internal citations omitted).

*Hager* outlines the effect that a wanton or recklessly-held belief in the need for

self-protection has on the various degrees of homicide, as follows:

1. *Intentional murder or first-degree manslaughter*
   a. Actual belief not wantonly or recklessly held = acquittal.
   b. Wanton belief = second-degree manslaughter, because it constitutes a defense to intentional conduct, the mens rea element of both intentional murder and first-degree manslaughter, but it is unavailable as a defense to wantonness, the mens rea element of second-degree manslaughter.
   c. Reckless belief = reckless homicide, because it constitutes a defense to intentional conduct, the mens rea element of both intentional murder and first-degree manslaughter, and to wantonness, the mens rea element of second-degree manslaughter, but is unavailable as a defense to recklessness, the mens rea element of reckless homicide.
2. *Wanton Murder*
   a. Actual belief not wantonly or recklessly held = acquittal.
   b. Wanton belief = second-degree manslaughter, because it negates the aggravating element of "extreme indifference to the value of human life" necessary to convict of wanton murder, but is unavailable as a defense to wantonness, the mens rea element of second-degree manslaughter.
   c. Reckless belief = reckless homicide, because it negates the element of "extreme indifference to the value of human life" necessary to convict of wanton murder, and constitutes a defense to wantonness, the mens rea element of second-degree manslaughter, but is

unavailable as a defense to recklessness, the mens rea element of reckless homicide.

*Id.* at 843 (Other degrees of homicide omitted). Thus, if the jury had been properly instructed on both perfect self-protection (an actual belief in the need for self-protection) and imperfect self-protection (a wanton or reckless belief in the need for self-protection), it is possible that the jury could have believed that Hatcher held either an actual or wanton belief in the need for self-protection, thus resulting in either an acquittal *or* the result that intentional or wanton murder would have been reduced to a lesser degree of homicide. Regardless, it is clear that the failure to instruct the jury on perfect and imperfect self-protection was prejudicial.

However, this action is before us on the denial of an RCr 11.42 motion. Although we are persuaded that Hatcher did not receive a fair trial because of the failure to instruct the jury on the whole law of the case, the question is whether counsel's representation fell below an objective standard of reasonableness and whether such failure prejudiced Hatcher's case. We can most certainly say that the *second* prong of *Strickland* is met as there is a reasonable probability that the result would have been different but for these errors. The only question left is whether the actions taken by counsel were deficient, falling below an objective standard of reasonableness.

We note that Hatcher's counsel *did* request that the jury be instructed on self-protection *before* the instructions were drafted. However, he made *no objection* to the instructions once written, despite the fact that the instructions only fleetingly referenced self-protection in the murder instruction and no separate self-protection instruction was included. Further, counsel *did not* request an instruction on imperfect

self-protection. In all fairness to defense counsel, he had already been in court for nearly 13 hours by the time the court asked him to state his objections to the instructions.[6] Nevertheless, the assistance he provided fell below an objective standard of reasonableness.

Hatcher was provided ineffective assistance of counsel because counsel failed to object that there was no separate self-protection instruction, failed to object that self-protection was not even defined for the jury despite the lack of instruction (the jury being left with no legal basis upon which to decide whether Hatcher acted in self-protection), failed to request an imperfect self-protection instruction, and failed to request that EED be defined for the jury. Moreover, although not raised by Hatcher in this action, defense counsel *also* failed to object to the instructions on the grounds that there should have been an instruction on second-degree manslaughter as a lesser-included offense to wanton murder. *Parker, supra.* Finally, although not necessarily objectionable, it would have been *preferable* for counsel to request that form instructions be used for the combination instruction on intentional and wanton murder so as to distinguish between whether the jury was finding Hatcher guilty of intentional murder or wanton murder. *Benjamin v. Commonwealth, supra.*

Thus, under the atypical circumstances presented to us in this case, we hold that the record establishes that both prongs of *Strickland, supra* have been met and an evidentiary hearing is not required.[7]

## Conclusion

For the foregoing reasons, we reverse the trial court's order of July 16, 2008, denying Hatcher post-conviction relief under RCr 11.42, vacate Hatcher's conviction and sentence for murder, and remand for a new trial solely on the charge of murder and its lesser included offenses. Each of Hatcher's other convictions is unaffected.

On retrial, form instructions should be used to distinguish between intentional and wanton murder. Moreover, second-degree manslaughter must be instructed upon as a lesser included offense of wanton murder. Further, EED must be defined for the jury, and the jury must be instructed that it is not applicable to wanton murder. Finally, separate instructions on both perfect and imperfect self-protection and their effects on the various degrees of homicide are required and should model

---

**6.** On Thursday, July 7, 2005, before adjourning for the day, the trial judge made known his intention that the trial would be completed the next day. On the morning of July 8, 2005, court reconvened at 8:52 a.m. By the time the trial court asked defense counsel whether he had any objections to the instructions, it was 9:35 p.m. at night (some twelve hours and forty-three minutes since court had reconvened that morning). Tellingly, one attorney could be heard to exclaim only minutes later: "I wish we could come back tomorrow." (What is more remarkable—although not relevant to the issues raised in the present appeal—is that the jury was not excused until 5:36 a.m. on Saturday morning, some twenty-one hours after they arrived in court).

**7.** Under *Fraser v. Commonwealth*, 59 S.W.3d 448 (Ky.2001), an evidentiary hearing is not required unless there is a "material issue of fact that cannot be conclusively resolved, *i.e.,* conclusively proved or disproved, by an examination of the record." *Id.* at 452. In the present case, it is apparent on the face of the record that counsel did not object to the jury instructions on any of the grounds noted herein, nor did he tender his own instructions or request an instruction for imperfect self-protection, thus depriving the jury of the ability to decide by the appropriate legal standards whether Hatcher acted under EED, in perfect self-protection, or in imperfect self-protection.

the instructions offered by the Kentucky
Supreme Court in *Hager, supra.*

ALL CONCUR.