# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000258-MR

DATE 7-7-16 Ent Group P.C.

ALLEN WAYNE HATCHER                     APPELLANT

V.

ON APPEAL FROM EDMONSON CIRCUIT COURT
HONORABLE RONNIE C. DORTCH, JUDGE
NO. 03-CR-00118

COMMONWEALTH OF KENTUCKY             APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A jury convicted Allen Wayne Hatcher of murder and various other drug offenses in 2005, and this Court affirmed on direct appeal. *Hatcher v. Commonwealth*, No. 2005-SC-0623-MR, 2006 WL 2456354 (Ky. Aug. 24, 2006). The Court of Appeals later vacated Hatcher's murder conviction on a Rule of Criminal Procedure (RCr) 11.42 motion, and Hatcher was again convicted of murder after a second trial. He now appeals as a matter of right from that murder conviction and sentence of life imprisonment. Hatcher argues that the trial court erred when it (1) allowed the Commonwealth to present evidence of drugs found inside his house; (2) gave an oral addition to the jury instructions; (3) allowed a lay witness to give improper opinion testimony; and (4) allowed a probation and parole officer to testify in too much detail about Hatcher's prior

convictions during the penalty phase. Having reviewed the record, the arguments of the parties, and the law, we affirm.

## I. BACKGROUND.

At the outset, we note that there are different versions of what occurred on the night in question. We set forth the substantially agreed on facts before the witnesses' retellings diverge.

On the night of November 6, 2003, Edward Tankersly and Christopher Sexton drove from Tennessee to a bar in Bowling Green to have a few drinks and meet women. The pair used drugs at various times that evening. When the bar closed, Tankersly suggested to Sexton that they go to Hatcher's house in Edmonson County to either meet more women or catch up with old friends. Regardless of the reason, the pair arrived unannounced at Hatcher's house in the early morning hours. Just before entering Hatcher's house, Sexton and Tankersly used cocaine and Tankersly asked Sexton if he "had his back."

Accounts of what happened next differ. Sexton, the Commonwealth's chief fact witness, testified that he and Tankersly were invited inside Hacker's house. However, Sexton, who returned to the car to retrieve a beer, did not follow Tankersly directly into the house. When Sexton entered the house he found Tankersly, Hatcher, James "Rodney" Gross, and Paula Beckner all in the front room. According to Sexton, Hatcher was seated in a recliner and Tankersly was talking with Beckner, who was "breaking up" marijuana at a table in the middle of the room. Sexton claimed to see Tankersly kiss Beckner's hand and testified that this angered Hatcher because Beckner was

2

Hatcher's girlfriend. Hatcher told Tankersly to leave the house, and Hatcher then left the room.

Hatcher and Gross refuted this version of Tankersly's arrival. Gross, who was Hatcher's employee, testified that the two had been working late that night in the woodshop attached to Hatcher's house. Gross testified that he and Hatcher were taking a break and siting with Beckner in the front room of the house when Gross heard a car arrive. Gross contended that as soon as he started to open the front door, Tankersly burst through the entrance, knocking him backward. Gross testified that Hatcher immediately told Tankersly to leave but Tankersly refused. After a brief, heated exchange, Hatcher stood from his recliner and left the room.

Both parties agree to the following: Hatcher returned to the front room carrying a handgun. He demanded that Tankersly leave, and the pair argued. Moments later, Hatcher fired what he characterized as a warning shot into the floor; however, the bullet struck Tankersly in the leg.

Here again, the witnesses' retellings differ. Sexton testified that, on seeing Hatcher fire the gun, he fled the house through the front door. However, not wanting to abandon his friend, Sexton claimed he immediately returned to help Tankersly escape. Sexton met Tankersly at the front door, but before Tankersly could exit, Hatcher shot him in the head.

Gross, on the other hand, testified that Sexton yelled that he had a gun in the car and that he would kill all of them. Hatcher testified that he saw Sexton and Tankersly meet face-to-face in the front doorway and that he

3

thought Sexton handed Tankersly a gun. Hatcher did not deny shooting Tankersly in the head, but claimed that Tankersly had begun to turn back toward him and that he only shot Tankersly out of self-defense.

Sexton, with Gross's help, carried Tankersly back to the car, and Beckner provided some towels to help curb his bleeding. Not knowing the area, Sexton asked for directions to a hospital, and Gross provided them. However, not long after Sexton drove off, he stopped at another house and asked the residents to call 911. The police and emergency services arrived and transported Tankersly to the hospital, where he died soon after arrival.

Sexton directed the police to Hatcher's house. Finding no one at the house, the police obtained a warrant and searched the house. The police found bullet holes and evidence that someone had attempted to clean up Tankersly's blood. Furthermore, the police seized a large quantity of drugs, drug paraphernalia, drug manufacturing components, and other evidence of drug trafficking. The police later found towels soaked with Tankersly's blood in the woods off the road when they were leaving Hatcher's house.

A few hours later, Beckner called the police and reported that she, Hatcher, and Gross had driven to Elizabethtown and checked into a motel. They eventually returned to Edmonson County and surrendered to the police. Hatcher volunteered that the gun he used to shoot Tankersly was inside their car, and the police recovered it. The police did not recover any other guns.

4

Following a three day trial in 2005, Hatcher was convicted of murder and sentenced to 30 years' imprisonment.[1] Hatcher was also convicted of numerous drug charges[2] and sentenced to a total of 10 years' imprisonment to be served concurrently with the murder sentence. This Court upheld Hatcher's convictions on his appeal as a matter of right. *Hatcher*, No. 2005-SC-0623-MR, 2006 WL 2456354, at *4.

In 2008, Hatcher filed a RCr 11.42 motion, arguing, among other things, that his trial counsel was ineffective for failing to object to the murder jury instruction. The trial court denied relief, but the Court of Appeals reversed and vacated Hatcher's conviction and sentence for murder and remanded for a new trial on that charge alone. *Hatcher v. Commonwealth*, 310 S.W.3d 691, 702 (Ky. App. 2010), *as modified* (Apr. 23, 2010).

Hatcher was convicted of murder after a second trial in 2015 and sentenced to life imprisonment. Due to the significant time lapse between the two trials, several witnesses from the first trial were unavailable to testify, so large portions of testimony at the second trial consisted of video testimony from the first trial. Hatcher now appeals that conviction and sentence to this Court as a matter of right. Ky. Const. § 110(2)(b). We set forth additional facts as necessary below.

---

[1] Gross and Beckner were also tried for murder, under the theory of complicity, but the jury acquitted them both of that charge.

[2] Trafficking in marijuana, eight ounces or more, while in possession of a firearm; two charges of trafficking in a controlled substance first degree while in the possession of a firearm; possession of drug paraphernalia while in possession of a firearm; and possession of a methamphetamine precursor.

5

## II.   STANDARD OF REVIEW.

The issues raised by Hatcher have different standards of review, which we set forth as necessary when analyzing each issue.

## III.   ANALYSIS.

### A.   Drug Evidence.

Prior to trial, Hatcher moved to exclude evidence of drugs that were seized from his house as well as any mention of the drug charges and convictions that arose therefrom. In doing so, he noted that he had already served out the sentences related to those convictions. The Commonwealth agreed that the drug-related charges and convictions should be excluded but argued that it should be allowed to present evidence of drugs and drug-related activity found in the course of the police investigation. The trial court granted Hatcher's motion as to the prior charges and convictions but denied it as to the evidence of drugs and drug-related activity found at the scene, finding that evidence was "inextricably intertwined" with the murder charge.

At trial, the Commonwealth adhered to the trial court's ruling: there was no mention of Hatcher's prior drug charges and convictions during the guilt phase, but the Commonwealth did admit evidence regarding drugs and drug-related activity found in Hatcher's house. An investigating police officer identified nearly 20 photographs of drugs, drug paraphernalia, drug manufacturing components, and evidence of drug trafficking seized from Hatcher's house. A Kentucky State Police chemist tested the seized drugs, identified them, and testified regarding the specific quantities of cocaine,

6

methamphetamine, and marijuana. Furthermore, Sexton testified that Beckner was breaking up marijuana in the front room of Hatcher's house when he and Tankersly arrived.[3]

Hatcher now argues that this drug evidence was not relevant, not probative, and unfairly prejudicial under the Kentucky Rules of Evidence (KRE). The standard of review for the admission of evidence is whether the trial court abused its discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

KRE 404(b) provides:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

The list of acceptable purposes for which KRE 404(b)(1) evidence may be offered is "illustrative rather than exhaustive." *Tamme v. Commonwealth*, 973 S.W.2d 13, 29 (Ky. 1998), *as modified on denial of reh'g* (Sept. 3, 1998) (quoting

---

[3] The Commonwealth offered Sexton's testimony in the form of video of his testimony from the first trial. Sexton was unavailable to testify live because he had died.

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.25 (3rd ed. 1993)).

We begin our analysis by noting that KRE 404(b) is a rule of exclusion, and trial courts must apply the rule cautiously to prevent admission of such evidence simply to prove propensity to commit a crime. *Southworth v. Commonwealth*, 435 S.W.3d 32, 48 (Ky. 2014), *reh'g denied* (Mar. 21, 2014), *as modified on denial of reh'g* (June 19, 2014). In *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994) we articulated the longstanding framework for analyzing KRE 404(b) evidence: the trial court must ask: (1) if the evidence is relevant for some acceptable purpose; (2) if the evidence is probative; and (3) whether the prejudicial impact of the evidence outweighs its probative value. We later explained that *Bell*'s probativeness prong "relates to whether there is sufficient evidence that the other crime, wrong, or act actually occurred." *Davis v. Commonwealth*, 147 S.W.3d 709, 724 (Ky. 2004), *as modified on denial of reh'g* (Nov. 18, 2004), *as modified* (Jan. 25, 2005) (internal quotation marks omitted).

### 1. *Relevance.*

Hatcher argues that the drug evidence was not relevant because no witness specifically testified that Tankersly went to Hatcher's house to buy drugs or that drugs motivated Hatcher to kill Tankersly. While we cannot disagree with this narrow characterization of the proof at trial, we hold that the trial court did not abuse its discretion when it found the drug evidence was relevant for an acceptable purpose.

8

The testimony and evidence regarding marijuana inside Hatcher's house was relevant as it lent credibility to the Commonwealth's version of events. Sexton testified that on entering Hatcher's house he saw Beckner breaking up marijuana in the front room. Hatcher testified that Sexton could not have seen Beckner from where he stood, and he attempted to cast doubt on whether Sexton was even inside the house at the time of the shooting. By offering evidence of the presence of marijuana inside the house, the Commonwealth corroborated Sexton's—and thus its own—theory of events.

The remainder of the drug evidence is relevant as to Hatcher's motive for shooting Tankersly or, in the alternative, motive for acting aggressively toward an intruder. In *White v. Commonwealth*, 178 S.W.3d 470, 476 (Ky. 2005), *as modified* (Jan. 6, 2006), White argued that the trial court violated KRE 404(b) when it allowed the Commonwealth to introduce evidence of his drug trafficking activities in his murder trial. In response to White's argument that the Commonwealth had failed to prove a direct connection between drug trafficking and murder, we explained:

> In making this argument, however, [White] essentially asks that we impose an additional requirement on the motive exception, namely that a witness must testify directly that the other criminal activity provided the motive for the charged crime. **But we require only that there be a direct connection between the other crimes and the charged crime. This is true even if that connection is the product of a reasonable inference, rather than the direct testimony of a witness.**

*Id.* (emphasis added). In other words, 404(b) evidence may be relevant when a jury can reasonably infer a connection between that evidence and a motive for the charged crime.

9

Applying *White* herein, the same result follows. During the trial, Kenneth Bell, a prison informant, testified that he overheard Hatcher talking about shooting Tankersly while they were both in prison. As to a reason for the shooting, Bell recalled hearing that Hatcher and Tankersly "got into a little argu—dispute over some money or something to that nature." Although Bell could not specifically recall whether the dispute concerned drug money—and Hatcher emphasizes this point—it is sufficient that the jury could have reasonably inferred the connection. Sexton admitted that Tankersly had used marijuana and cocaine that night, and those drugs were found in Tankersly's system postmortem. Drugs and evidence of drug trafficking were discovered in Hatcher's house. Therefore, the trial court did not abuse its discretion when it found that the evidence of drugs in Hatcher's house was relevant to Hatcher's motive for shooting Tankersly because the jury could have reasonably inferred that Hatcher and Tankersly's late-night dispute concerned a drug transaction.

Moreover, evidence of drugs in Hatcher's house is also relevant to prove Hatcher's reason for reacting aggressively toward and ultimately shooting Tankersly. Considering the evidence of drugs, combined with Sexton's testimony that Tankersly asked him if he "had his back" before entering Hatcher's house, the jury could have reasonably inferred that Tankersly entered with the intent to steal Hatcher's property or do others harm. This inference, if the jury had made it, would have supported Hatcher's theory that he shot Tankersly in self-defense.

10

## 2.  *Probativeness.*

As to probativeness, there was more than sufficient evidence that Hatcher possessed and trafficked drugs. Sexton testified that he observed marijuana in Hatcher's house, and an investigating police officer identified numerous photographs of drugs and drug trafficking evidence seized from Hatcher's house. Furthermore, a jury convicted Hatcher of multiple counts of possession and trafficking after his first trial. Therefore, the trial court did not abuse its discretion when it found the drug evidence was sufficiently probative.

## 3.  *Prejudice.*

Hatcher argues that he was unfairly prejudiced because the Commonwealth presented evidence to paint him as "a major narcotics trafficker, methamphetamine cook and drug addict." He also claims that the prejudice was manifested by the jury recommending a life sentence during the penalty phase of his trial. In either circumstance, we are not convinced that the trial court abused its discretion when it found that any prejudice did not outweigh the drug evidence's probative value.

As stated above, the drug evidence was probative and relevant regarding Hatcher's motive for shooting Tankersly. The jury was free to infer from the evidence that Hatcher murdered Tankersly as the result of a drug money dispute or that Tankersly was an invader and Hatcher acted out of self-defense. The prejudice, on the other hand, is that the jury heard the drug evidence and may have inferred that because Hatcher possessed drugs, he was a murderer. While this type of prejudice is certainly possible, we do not agree that the

11

chance of it outweighs the relevance of motive and intent in this case, especially when the probative value cuts both ways.

Furthermore, we are persuaded by our previous decision in which we reviewed Hatcher's first trial. There, Hatcher claimed that the trial court erred when it denied his motion to sever the drug charges from the murder charge, arguing that the drug evidence impaired his credibility and increased the probability of the jury presuming him guilty of murder based solely on his involvement with drugs. *Hatcher*, No. 2005-SC-0623-MR, 2006 WL 2456354, at *4. Citing the standard for what a defendant must prove to overturn a conviction for improper joinder, we held that any such potential for prejudice did not rise to the level of being "unfair" or "unnecessarily or unreasonably hurtful." *Id.* (quoting *Commonwealth v. Rogers*, 698 S.W.2d 839, 840 (Ky. 1985). We also held that the "drug crimes evidence was necessary and relevant to prove the Commonwealth's case regarding the murder charge." *Id.* Although the preceding holdings dealt specifically with the issue of joinder, their logic applies equally to the admission of the drug evidence.

Finally, Hatcher argues that his life sentence is proof that he was unfairly prejudiced by the drug evidence. We are not persuaded because by the time the jury recommended its sentence, it had heard testimony from a probation and parole officer about Hatcher's prior drug convictions. Thus, the admission of the drug evidence in the guilt phase likely had no impact on Hatcher's sentence.

12

Therefore, because the drug evidence satisfies all three prongs of the *Bell* analysis, we hold that the trial court did not abuse its discretion when it allowed the Commonwealth to put it before the jury.

**B.    Jury Instruction.**

Hatcher also claims that the trial court erred when it gave the following general oral instruction before reading the written instructions to the jury:

> Do not put yourself in the position of the victim or the defendant.
> I'll put it this way, do not say, "well if I were the defendant I would
> have done this," or, "if I were the victim, I would have done this."
> Rely upon the evidence.  Rely upon what has been presented to
> you in making those verdicts.

Hatcher argues that this instruction prevented the jury from fully considering his subjective claims of self-defense and extreme emotional disturbance. However, Hatcher also admits that this issue was not preserved. Therefore, we will only reverse if palpable error occurred.

We reverse under the palpable error standard only when a "manifest injustice has resulted from the error." RCr 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006).

Hatcher does not submit any case law holding this instruction as erroneous.  Instead, he argues that the "focus of the penal code is on the defendant's actual subjective belief in the need for self-protection and not on the objective reasonableness of that belief.  Even if a defendant is mistaken in his subjective belief, he is still entitled to the defense of self-protection[.]"

*Commonwealth v. Higgs*, 59 S.W.3d 886, 889-90 (Ky. 2001) (internal citations and quotation marks omitted). And because the trial court forbid the jury from putting itself in his position, Hatcher argues that the jury could not fully evaluate his subjective beliefs and thus his defenses. We disagree with Hatcher's characterization of the trial court's instruction.

Taken alone, the instruction's first sentence might support Hatcher's position. However, reading that ambiguous sentence in the context of the full instruction, we hold it was not erroneous. In keeping with this Court's prohibition against prosecutors asking the jury to imagine themselves in the position of the crime victim or a "golden rule" argument, *Caudill v. Commonwealth*, 120 S.W.3d 635, 675 (Ky. 2003), *as modified* (Feb. 5, 2004) (citing *Black's Law Dictionary* 700 (7th ed. West 1999), the trial court was merely instructing the jury to set aside their **own** subjective beliefs as to the reasonableness of Hatcher's actions. *Higgs* makes clear that this instruction is not erroneous. The jurors were required to focus on Hatcher's subjective beliefs and not to judge the objective reasonableness of those beliefs against what they would have done instead. We detect no error—much less palpable error—in the trial court's instruction.

## C.  Bell's Testimony.

Hatcher argues that error occurred when Bell—the prison informant mentioned above—testified later about his opinion of Hatcher's use of self-defense. During Bell's testimony, the following exchange occurred:

14

| | |
|---|---|
| **Commonwealth:** | During that time, did Mr. Hatcher ever say anything that when he shot the decedent that he was afraid? |
| **Bell:** | No. He didn't mention whether the other guy had a weapon or not. So I assume that it wasn't in self-defense. |
| | . . . . |
| **Commonwealth:** | Did [Hatcher] ever mention self-defense? |
| **Bell:** | No. |
| **Commonwealth:** | Did that surprise you? |
| **Bell:** | Yes, it was—it came as a shock to me because, you know. I just—it was just—it was just unexpected the way he described it and how openly he described it. |

Hatcher admits that this issue was unpreserved, as well; therefore, we conduct a palpable error review only.

KRE 701 permits non-expert or lay opinion testimony when those opinions or inferences are: "(a) Rationally based on the perception of the witness; (b) Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Bell's latter two answers certainly did not run afoul of this rule. Bell's testimony that Hatcher never mentioned self-defense was based on his personal knowledge, *i.e.* that he never heard Hatcher mention self-defense. It was not an opinion. Likewise, the fact that Bell was surprised by Hatcher not mentioning self-defense was subjective; however it was not opinion. Finally, Bell recounting that Hatcher "openly" described the shooting may have been an

15

opinion regarding the frankness of Hatcher's retelling, but it satisfied KRE 701. Bell personally heard Hatcher describe the shooting; thus his characterization is rationally based on his own perception. Bell's opinion as to the way in which Hatcher recounted the shooting was helpful and relevant to aid the jury in determining if Hatcher's self-protection defense was a fabrication. And Bell's opinion was not based on scientific, technical, or other specialized knowledge.

Bell's opinion that the shooting was not in self-defense, however, requires more analysis. In *Ordway v. Commonwealth*, 391 S.W.3d 762, 775 (Ky. 2013) we reversed Ordway's murder conviction because a police detective was allowed to opine that Ordway did not act like those who had lawfully protected themselves but had instead acted like those who were fabricating a self-protection defense. We reasoned that "[t]he testimony was incompetent because it permitted the police detective to authoritatively suggest how innocent persons behave after they lawfully engage in an act of self-defense, and to then, with some measure of certainty, exclude [Ordway] from that class of persons based upon his conduct following the shooting. *Id.* at 775-76.

Furthermore, in the unpublished opinion *Whaley v. Commonwealth*, No. 2009-SC-000516-MR, 2011 WL 1642191, at *5 (Ky. Apr. 21, 2011), we found no abuse of discretion when the trial court did not allow a lay witness to offer an opinion about whether Whaley was acting in self-defense. Although the Commonwealth argued that KRE 701 allows a witness to testify in the form of an opinion as to an impression of the facts, we reasoned that the question

16

could reasonably be interpreted as asking for an impermissible legal conclusion from a lay witness. *Id.* (citing *Tamme*, 973 S.W.2d at 32).

While these cases are instructive as to whether the trial court herein committed error by allowing Bell to testify about his opinion of Hatcher's use of self-defense, we decline to belabor that question because we hold that any error in allowing the testimony was not palpable. First, Bell's unsolicited assumption was but one comment in a multi-day trial comprised of more than 15 witnesses. Second, in contrast to the police detective in *Ordway*, Bell was a prison informant and not testifying according to his expertise or experience. Finally, any prejudice from Bell's opinion was minimal in light of the Commonwealth's other proof negating self-defense, which included: Sexton's testimony, evidence of attempts to clean up and hide Tankersly's blood, and Hatcher's flight from the scene to stay in an out-of-town motel. Based on the above, we are not convinced that a different result would have followed or that any error so fundamental as to threaten Hatcher's entitlement to due process of law was committed. Therefore, any error committed by the trial court was not palpable.

## D.    **Evidence Surrounding Prior Convictions.**

Finally, during the penalty phase of the trial, the Commonwealth called a probation and parole officer to testify regarding Hatcher's prior convictions. The officer testified about numerous prior convictions, including that Hatcher, as part of a plea bargain to first-degree criminal trespass and theft by unlawful taking under $500, had been required to pay restitution to unidentified victims

17

and that a confiscated weapon had been forfeited as the result of a possession of marijuana conviction. Hatcher now claims that the trial court committed error when it allowed this testimony of mandatory restitution and forfeiture before the jury. Again, because this issue was unpreserved, we only review for palpable error under RCr 10.26.

KRS 532.055(2)(a) states: "Evidence may be offered by the Commonwealth relevant to sentencing including: (1) Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor; [and] (2) The nature of prior offenses for which he was convicted . . . ." We have held that all that is admissible as to the nature of a prior conviction is a "general description of the crime." *Robinson v. Commonwealth*, 926 S.W.2d 853, 855 (Ky. 1996).

In *Stansbury v. Commonwealth*, 454 S.W.3d 293, 303-05 (Ky. 2015), we held in relevant part that palpable error occurred when the trial court admitted evidence that Stansbury had been required to pay restitution to an identified local business due to a prior conviction. In so doing, we relied on unambiguous direction from *Mullikan v. Commonwealth*, 341 S.W.3d 99, 109 (Ky. 2011), that "[t]he trial court should avoid identifiers, such as naming of victims, which might trigger memories of jurors who may—especially in rural areas—have prior knowledge about the crimes." *Id.* at 304. Therefore we held that we could not say that the introduction of "the identities of local victims with whom the jurors might have had a connection" did not have an impact on Stansbury's sentence. *Id.* at 305. We note that we provided no analysis

18

regarding the potential prejudice of a defendant paying restitution to an unidentified victim.

After considering the entire record, we are not persuaded that the admission of restitution to unidentified victims and forfeiture of a weapon rose to the level of palpable error. In contrast to *Stansbury*, the victims were not identified in the case at hand. Therefore, there was no potential for prejudice as there was nothing to trigger the memories jurors may have had about Hatcher's prior crimes. Also, Hatcher has not shown that the forfeiture of the gun was sufficiently prejudicial to constitute palpable error. Finally, the jury heard testimony regarding at least seven other prior convictions in addition to those above. Based on Hatcher's criminal history and overwhelming evidence of murder, we hold that no palpable error occurred during the penalty phase of Hatcher's trial and thus his sentence is affirmed.

With that said, the Commonwealth would be wise to reconsider the breadth of the evidence it wishes to introduce under KRS 532.055(2)(a)(1)-(2). Although not the case here, we will not hesitate to reverse a sentence where the potential for prejudice is ripe.

## IV. CONCLUSION.

For the reasons stated above, Hatcher's murder conviction and life imprisonment sentence are affirmed.

All sitting. All concur.

19

COUNSEL FOR APPELLANT:

John Gerhart Landon
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Nathan Todd Kolb
Assistant Attorney General