**Deshawn PARKER, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2005–SC–000343–MR.**

Supreme Court of Kentucky.

Dec. 20, 2007.

view the trial court's decision to deny the *Batson* objection only for plain error.).

Trevor W. Wells, Miller & Wells, Lexington, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, George G. Seelig, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, DeShawn Parker, was convicted of one count of murder, two counts of criminal attempt to commit murder, second-degree assault and tampering with physical evidence, and was sentenced to an aggregate, concurrent 25 year term of imprisonment. On appeal he claims that his constitutional rights to a speedy trial were violated; that the trial court abused its discretion in denying a motion for a mistrial following the playing of a rap CD by the Commonwealth in opening statement which was later not admitted; that the

Commonwealth was erroneously permitted to introduce prejudicial evidence of gang activity without proper pretrial notice; that the trial court allowed the Commonwealth to erroneously introduce unsworn out-of-court statements of witness Shamekia Wright; that the trial court failed erroneously to instruct the jury on the lesser included offense of second-degree manslaughter; and that the trial court erroneously denied Appellant's motion for a directed verdict on tampering with physical evidence. Because the trial court erred in allowing the playing of the rap CD in opening statement, with commentary by the Commonwealth, when the CD could not later be properly admitted, and the error could not be cured by admonition, we reverse and remand for a new trial. Further, under the facts of this case, Appellant was entitled to an instruction on second-degree manslaughter, and the murder conviction could be reversed on that ground alone. Other claims of error will be rectified by retrial.

## I. Background

Laknogony McCurley was shot to death during the early morning hours of July 31, 2000, during an ongoing feud between two rival West End Louisville gangs. The Appellant, DeShawn Parker, who was indicted with five other codefendants, was a member of the gang "Victory Park Crips," sometimes also known as the "Rat Pacc." The rival gang was known as the "Southwick Bloods." Appellant and two others were riding in a vehicle driven by Marcus Stallard, allegedly on their way to kill two of the Bloods. The victim, McCurley, a girlfriend of one of the Bloods, was in the vehicle of the Bloods at the time of the drive-by shooting. Testimony indicated that Stallard pulled his vehicle alongside the Bloods' vehicle and that Appellant and the two passengers opened fire at the other car, with Appellant firing across Stallard toward the other vehicle, and then they drove away. McCurley was shot six times and died as a result. Another passenger in the Bloods' vehicle was shot but survived.

At trial Appellant presented no proof, and the trial resulted in the convictions that are the subject of this appeal.

## II. Use of Rap CD in Opening Statement

Before trial, Louisville police officers came into possession of a rap CD allegedly made by Appellant, his brother Kenneth, and "Two Tom" Taylor. The three charged an officer five dollars for the CD. The trial court allowed the CD to be played during the Commonwealth's opening statement over the objection of Appellant, but warned the Commonwealth that if the CD was not admitted during trial that the Appellant would be entitled to a mistrial. The Commonwealth Attorney asserted a "good faith belief" that statements on the CD would constitute "adoptive admissions" by Appellant, and during opening, commented that the Crips rapped about a violent act they committed on July 31, 2000. After playing the CD, the Commonwealth commented further that the lyrics said "shot the bitch at close range" and "remember the 31st."

Later during the trial when the Commonwealth offered the CD into evidence, the trial court excluded it because it could not be properly authenticated or construed as adoptive admissions. Appellant moved for a mistrial, reminding the trial court that it had said a mistrial would be warranted if the CD proved inadmissible when he had objected to the CD being played in opening statement. Instead, the trial court elected to admonish the jury to totally disregard the CD. However, this was done in a somewhat unorthodox way: the

admonition was given at the close of one day and again at the beginning of the next. After the first admonition, the trial court allowed the jurors to respond openly as to whether they could disregard the CD. All nodded that they could. The next day, after telling the jury that it understood how difficult it was to respond truthfully in front of the other jurors, the trial court instructed the jury to make a private written response as to whether each could disregard the CD. All again said they could. In making these admonitions, the trial court repeatedly referenced the CD, obviously trying valiantly to ensure that the jury understood it should not be considered as evidence. The motion for mistrial was then denied.

 While a mistrial is disfavored, the trial court retains broad discretion to determine whether a mistrial is necessary and appropriate. *Gosser v. Commonwealth,* 31 S.W.3d 897, 906 (Ky.2000). Nevertheless, one should be granted where there is a serious error such that a mistrial is a manifest or urgent necessity. *Id.; Commonwealth v. Scott,* 12 S.W.3d 682 (Ky.2000).

This case presents two issues regarding use of the CD, both of which are preserved. First, Appellant objected to the use of the CD during the Commonwealth's opening statement. Second, he objected *to any admissibility* of the CD in the Commonwealth's case in chief. Based on the record, it was error to use the CD in either instance.

 Over the last several years, the scope of statements made during opening remarks has expanded considerably. The purpose of opening statement is to outline for the jury what the proponent expects his proof to be. *Fields v. Commonwealth,* 12 S.W.3d 275, 281 (Ky.2000) ("The only legitimate purpose of an opening statement is so to explain to the jury the issue

they are to try that they may understand the bearing of the evidence to be introduced."); *Co–De Coal Co. v. Combs,* 325 S.W.2d 78, 79 (Ky.1959) ("An opening statement of counsel is prefatory to introducing evidence. Its purpose or function is merely to inform the judge and the jury in a general way of the nature of the case and the issues involved, particularly to outline what the attorney's client expects to prove."). In aid of that, charts, photographs and other demonstrative materials are used to explain the proposed testimony. The obvious problem with using various materials in the opening statement is that they have not been properly admitted into evidence at that point. Thus, use of evidence in opening statements must be limited generally, and use of evidence like that in this case simply is not allowed. *See Fields,* 12 S.W.3d at 281 ("While we have allowed prosecutors to display admissible items of real evidence to the jury during opening statement, we have never sanctioned the playing of a witness's prerecorded *testimony* during opening statement, much less a witness's prerecorded unsworn statement." (citations omitted)). The same is true about commentary made by counsel that is not later supported by evidence admitted into the record. If the materials or commentary go beyond a brief explanation, a great risk is created that a mistrial may become necessary. While there is certainly the temptation to advance one's argument at the beginning of the trial so that the jury understands not only what the testimony is expected to be, but the proponent's theory of the case as well, this is not the intent of opening statement, and pushing the envelope results in error such as occurred here.

 In playing the CD during opening statement and in telling the jury what it purported to say, the Commonwealth placed unauthenticated evidence before the

jury. As the trial developed it became apparent that the Commonwealth could not establish the meaning of the words, or even what they were, through witnesses, nor could the Commonwealth prove who made the CD, or whether the Appellant was actually connected to it. In short, the Commonwealth was able to tell the jury that the CD referred to the Appellant having committed the murder of which he was accused, and that he was bragging about it through the CD recording (which was clearly prejudicial) even though the CD could not be sufficiently authenticated to be admitted into evidence. Obviously the Appellant had no ability to cross-examine regarding this information or to otherwise properly defend against it. By using unauthenticated materials in opening statement the Commonwealth unfairly exposed the jury to inflammatory information of such a nature that no admonition could reasonably be believed to cure it.

This case falls squarely within the parameters of *Johnson v. Commonwealth,* 105 S.W.3d 430 (Ky.2003). In *Johnson,* this Court found that "the presumptive efficacy of an admonition falters when there is an overwhelming probability that a jury cannot follow the admonition" about evidence devastating to the defendant, or when the evidence is without a factual basis and is inflammatory or highly prejudicial. A rap song bragging about committing a violent murder that is ascribed to a defendant, along with the inferential fears about gang activity, is clearly inflammatory and certainly becomes prejudicial if it cannot be properly linked to that defendant. While the trial court went to some length here to obtain statements from the jury that each would disregard what they had heard on and about the CD, the inflammatory nature of the improper evidence is such that, even with the best intentions in the world, the jury cannot be expected to truly disregard it. While curative admonitions are strongly favored, the Court in *Johnson* enunciated the necessary exceptions, as this case demonstrates.

This Court is stopping short today of saying that no aids or materials may be used in opening statement. However, it is necessary that when evidentiary materials are used, they must at least be authenticated or their admissibility determined before their use. Likewise, commentary should be linked to that which can be supported by the evidence reasonably expected to be admitted. Otherwise, a mistrial is invited when an admonition may not be able to cure the error. The trial court must be the gatekeeper for the proper use of materials not yet admitted into evidence in the opening statement. To fail to do so is an abuse of discretion, and in this case requires reversal and remand for a new trial.

### III. Second–Degree Manslaughter Instruction

At trial, Appellant tendered an instruction on second-degree manslaughter which the trial court declined to give to the jury. The trial court instructed the jury that it could find the Appellant guilty of either intentional or wanton murder. Intentional murder was defined under instruction number 1, and wanton murder was defined under instruction number 1 A. The jury found the defendant guilty of wanton murder under instruction 1 A. Appellant now argues that it was reversible error to fail to give a second-degree manslaughter instruction as a lesser-included offense. This Court agrees.

The trial court has the responsibility of determining which instructions are appropriate to present to the jury. Inherent in that task is analyzing what the evidence will support, viewed from every possible

outcome that has an evidentiary basis. It is the jury that must apply the instructions to the facts as they believe them to be. The trial court must not enter into that realm, if it can be determined that under any possible construction of the facts different results could be obtained. In certain circumstances, a trial court may be able to determine that, as a matter of law, only one interpretation of the facts could be reached by any reasonable jury. For example, if all the evidence supports an intentional act, and the defendant does not present a defense or presents an alibi defense, then the court could only properly instruct on intentional murder, as presented in William S. Cooper and Donald P. Cetrulo, *Kentucky Instructions to Juries, Criminal* § 3.20 (5th ed.2007) [hereinafter Cooper's *Instructions* ].[1] As the Commentary to that section notes, there are no lesser-included offenses in this circumstance, so no further instructions can be given. If there is evidence of extreme emotional disturbance, justification, or

both, then the court should instruct as in § 3.21 of Cooper's *Instructions,* which adds these elements to the instruction.[2] In this event, the court would then also be required to instruct on second-degree manslaughter if a wanton state of mind were indicated or reckless homicide if a reckless state of mind were indicated, or both if the jury could find either under the given facts, as lesser-included offenses. If the evidence supported only a wanton state of mind, then the trial court must instruct only on wanton murder, as set forth in § 3.23 of Cooper's *Instructions.*[3] but would be required to also instruct on the lesser-included offenses of second-degree manslaughter and reckless homicide (if the evidence could be interpreted as either showing a wanton or reckless state of mind).

However, when the evidence could be interpreted by a jury as demonstrating either an intentional or wanton, or possibly reckless state of mind, then the combination murder instruction set forth at § 3.24

1. Justice Cooper's instruction on intentional murder reads:

You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt that in this county on or about _____ (date) and before the finding of the Indictment herein, he intentionally killed _____ (victim) by _____ (method).

2. Justice Cooper's instruction on intentional murder with the additional EED and/or justification elements reads:

You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about _____ (date) and before the finding of the Indictment herein, he killed _____ (victim) by _____ (method);

AND

B. That in so doing, he caused the death of _____ (victim) intentionally [and not while

acting under the influence of extreme emotional disturbance;]

[AND]

[C. That in so doing, he was not privileged to act in self-protection. (Or insert other appropriate justification or defense.) ]

3. Justice Cooper's wanton murder instruction reads:

You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about _____ (date) and before the finding of the Indictment herein, he killed _____ (victim) by _____ (method);

AND

B. That in so doing, he was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of _____ (victim) under circumstances manifesting extreme indifference to human life.

of Cooper's *Instructions* is *required*.[4] It is not to be used when the evidence clearly supports one state of mind but not the other. When the evidence is subject to different interpretations by the jury, even though the trial court might believe it unlikely that the jury could find the requisite state of mind for a lesser included offense, it is nonetheless required to instruct on the lesser-included offense if such an interpretation is *possible*.

■ Here, the trial court gave separate instructions on both intentional and wanton murder. This is not proper if the evidence supports only one or the other, or if the evidence allows for an interpretation of either. The facts of this case indicate that a jury could have believed either intentional or wanton murder, and it was correct to instruct on both, but not as separate instructions. A combination instruction similar to that set forth in § 3.24 of Cooper's *Instructions* is mandatory under these facts. With that instruction should come instructions on lesser-included offenses, notably here an instruction on second-degree manslaughter.

Having found that both states of mind were supported in the evidence, the trial court usurped the role of the jury in determining that the evidence did not support a manslaughter second degree instruction. Even though the jury did find a wanton state of mind under the instructions given, they were not given the opportunity to consider a lesser state of wanton culpability. It is possible the jury would have found wanton murder anyway; however, it is also *possible* for a finding of lesser wanton behavior, even though unlikely. The point is that this was a question for the jury, not the trial court.

Given the general reliance on form instructions, it is understandable that a court could be confused when reading § 3.20 and § 3.23 of Cooper's *Instructions* if evidence supports either. However, in that instance, only a combined instruction such as that in § 3.24 is correct.

Because Appellant was entitled to a second-degree manslaughter instruction he did not get, he would be entitled to a reversal on the murder charge alone if the Court were not reversing generally on other grounds. Should the evidence on retrial be the same, he will be entitled to the instruction in the future.

## IV. Remaining Claims of Error

The Appellant raises four other claims that are not error or can be rectified on retrial.

### A. Speedy Trial Rights

■ Appellant claims that his right to a speedy trial was violated by the approximately 30 month delay between indictment and trial. Speedy trial claims are evaluated under a balancing test with four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v.*

---

4. Justice Cooper's combined instruction reads:

You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about _____ (date) and before the finding of the Indictment herein, he killed _____ (victim) by _____ (method);

AND

B. That in so doing:
(1) He caused the death of _____ (victim) intentionally and not while acting under the influence of extreme emotional disturbance; OR
(2) He was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of _____ (victim) under circumstances manifesting extreme indifference to human life.

*Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *see also McDonald v. Commonwealth,* 569 S.W.2d 134, 136 (Ky. 1978) (applying the *Barker* test).

■ Though the crime in this case was a serious one requiring more complex preparation than ordinary street crime, the delay in this case was presumptively prejudicial. *See Bratcher v. Commonwealth,* 151 S.W.3d 332, 344 (Ky.2004) (holding an 18 month delay presumptively prejudicial in a murder case). That prejudice, however, is not alone dispositive and must be balanced against the other factors. *See Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (" '[P]resumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.").

■ Here, the Appellant has made no claim that this delay resulted in the unavailability of witnesses or physical evidence. In fact, he offered no proof at trial. Appellant is unable to demonstrate any prejudice in his ability to proceed in this case in presenting his version of events, even though he did frequently assert his right to a speedy trial. Given the subject matter, gathering evidence and inducing witnesses to come forward against other gang members reasonably makes the prosecution's investigation, though done with all possible diligence, go slowly. Since this crime involved a number of defendants alleged to be acting together, it was reasonable to attempt to prosecute them together, or to try to prosecute a key person first which often results in plea bargaining that expedites matters for everyone and improves judicial economy. There were also some unusual twists that added to the delay, such as recusals and transfers of the case between divisions of the court, that were not frivolous. Viewed in the complete context of the case, Appellant's speedy trial right was not violated.

## B. Evidence About Gang Activity

Appellant filed a pretrial Motion in Limine arguing that the Commonwealth had not provided the proper KRE 404(c) notice that it planned to introduce evidence regarding gang activity in the area, specifically Appellant's involvement in such. The notice requirement is mandatory, and failure to give proper notice can result in the evidence being excluded under KRE 404(c). However, since the verdict in this case is being reversed on other grounds, notice will not be a problem on retrial. Appellant also complains that the trial court misunderstood to whom KRE 404(b) applies, since the court allowed evidence of gang-related events leading up to the July 31, 2000 shooting as long as those events did not indicate any wrongdoing on behalf of Appellant. Clearly KRE 404(b) does not permit evidence of other crimes, wrongs, or acts to prove the character of a person in order to show he acted in conformity. To that extent, the rule is referencing a specific individual. Yet this does not remove the notice requirement when the evidence of other crimes, wrongs, or acts refers to someone other than the defendant. The trial court apparently believed that because gang-related evidence was general rather than about the Appellant specifically, the notice provision of KRE 404(c) did not apply. While the rule with its notice requirement is overwhelmingly applied to crimes or bad acts committed by a criminal defendant, it is also applicable to persons other than the criminal defendant. *See* Robert G. Lawson, *Kentucky Evidence Law Handbook,* § 2.25[3][a], 125–26 (4th ed.2003). Regardless, despite potential issues regarding relevance or other rules of evidence, the Appellant certainly has adequate no-

tice that this evidence might be offered again on retrial.

## C. Shamekia Wright's Out-of-Court Statements

Appellant complains that the Commonwealth attempted to impeach Wright's trial testimony with her unsworn, out-of-court statements. He acknowledges that KRE 801A permits examination of the witness at trial if her prior statements are inconsistent with her trial testimony, provided a proper foundation is laid pursuant to KRE 613. On remand, the Commonwealth will have the opportunity to lay a proper foundation, and the trial court will have the opportunity to determine whether the offered testimony is proper impeachment.

## D. Tampering with Physical Evidence

Appellant's Motion for Directed Verdict on this issue was denied by the trial court. He claims that there was insufficient evidence to warrant instructing the jury on this offense. On the record of this trial, while the evidence is scant, there is at least inferential evidence that Appellant acquiesced to the destruction of *some* weapons, although it was not clearly established that the murder weapon was among them. As this case is being reversed on other grounds, the trial court will have ample opportunity to weigh the sufficiency of the evidence relating to this offense on retrial.

## IV. Conclusion

Because the rap CD that was played in the Commonwealth's opening statement, and about which the Commonwealth gave commentary as to the actual language and meaning of the song played, was not properly admitted into evidence, it was error to allow the jury to hear it during the opening statement. Due to the extremely inflammatory nature of the CD and commentary, an admonition was not sufficient to cure the error. Consequently, the jury was allowed to hear what amounted to testimony that was improper and which the Appellant could not reasonably cross-examine. Nor could the jury be reasonably expected to completely disregard it. For these reasons, this verdict must be reversed and remanded for a new trial. Additionally, the Appellant is entitled to an instruction on all appropriate lesser-included offenses, including an instruction on second-degree manslaughter if the evidence is the same or substantially similar on retrial. Other claims of error can be addressed appropriately on retrial.

LAMBERT, C.J.; CUNNINGHAM, MINTON and SCHRODER, JJ., concur.

SCOTT, J., concurs in part and dissents in part by separate opinion. ABRAMSON, J., not sitting.

Opinion by Justice SCOTT, concurring in part and dissenting in part.

I concur with the majority regarding Parts II and IV of the opinion but write separately to dissent on Part III—I do not believe that Parker was entitled to an instruction on second-degree manslaughter. "An instruction on a lesser included offense is not required unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but yet conclude that he is guilty of a lesser included offense." *Combs v. Commonwealth,* 652 S.W.2d 859, 861 (Ky. 1983). In this matter, no reasonable juror in this case could conclude that Parker was guilty of a lesser included offense.