VENTERS, J., DISSENTING:
I respectfully disagree with the Majority's application of constitutional speedy trial principles. As too often in the past, this Court has again undervalued the important function served by the ancient right to a speedy trial and, in this instance, casts a blind eye to a trial judge's injudicious lack of attention to this case. Moreover, the trial judge exacerbated his years of passive neglect by unreasonably, and I believe outrageously, extending pretrial delay for more than a year by subjecting Henderson to a mental health evaluation simply because he persistently espoused his religious faith in trusting his legal fate to the Lord.
The Majority glosses over the trial judge's deficiencies with references to the crowded docket of the Jefferson County Court. We should not overlook the irony in the fact that the same Jefferson Circuit Court to which we generously ascribe an overcrowded trial docket stated in the arraignment in this very case, "The Court will strive to move each felony criminal case from arraignment to resolution within 180 to 365 days." That same court allowed 1,672 days to pass between Henderson's arrest and his trial. The record shows no effort on the part of the trial judge to get this expeditiously to trial.
Since 1972, speedy trial analysis has been guided by the United States Supreme Court opinion in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). As explained below, the Majority misconstrues the requirement of showing prejudice and thereby it improperly diminishes the primary prejudice that the right to a speedy trial is historically intended to prevent.
Henderson seeks the reversal of his conviction because his Constitutional right to a speedy trial was violated during the four-and-a-half-year delay between his arrest and his trial. Barker v. Wingo "places the primary burden on the [trial] courts and the prosecutors to assure that cases are brought to trial." 407 U.S. at 529, 92 S.Ct. 2182 ; see also Amos v. Thornton, 646 F.3d 199, 207 (5th Cir. 2011) ("The burden is on the Government to assign[ ] reasons to justify the delay.") (citing United States v. Ingram, 446 F.3d 1332, 1337 (11th Cir. 2006) (" 'Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner ... the burden is on the prosecution to explain the cause of the pre-trial delay.' " (quoting United States v. Brown, 169 F.3d 344, 349 (6th Cir. 1999) ) ); McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003) (collecting cases) ).
I will not belabor the timeline of events that filled the four and half years that Henderson remained incarcerated because *682 he could not post the $500,000 full-cash bail set by the trial judge. Three material facts things stand out: First, Henderson made two very routine pretrial motions to suppress evidence and evidentiary hearing were held on those motions. The trial could not begin until the judge decided those motions; indeed, in the ordinary case, a lawyer cannot even prepare for trial without knowing the judge's decisions on those motions. In total, twenty-seven months, more than two years, passed from the filing of Henderson's first suppression motion and the trial court's ruling. Henderson languished in jail, unable to make a very high cash bond, waiting for the trial judge to decide a routine suppression of evidence issue.
Second, Henderson made persistent motions for a speedy a trial when it became evident that his case was being neglected, thus it cannot be said that he waived his right to a speedy trial. The Majority faults Henderson for trying to get a new lawyer, or to represent himself, but ignores the fact that he did so because his own attorneys were unable or unwilling to secure his right to a speedy trial.
Third, more than three years after his arraignment, and within a few weeks of his trial date, the trial judge challenged sua sponte Henderson's competency and subjected Henderson to an involuntary mental health evaluation because he told the judge, in frustration after more than three years of pretrial incarceration:
Before I come into this court, I always ask God to give me a word if there is a word for me to speak. He just wanted me to inform you that I won't be needing a lawyer. From here on out, the Lord God is going to be my defense. He's going to fight my cause. No one is concerned about my cause in this courtroom like He is, and no one is trying to fight my cause like He is. So, from this point on, from this day forward, [my attorney] is dismissed. The Lord will fight my cause from this point on.
The trial judge stated in his order for the evaluation: "Mr. Henderson's apparent belief that God or the Lord can represent him at trial gives the court concern over Mr. Henderson's competency." After three years of pre-trial proceedings, the trial judge suddenly found Henderson's religion to be a concern for his mental competence. The mental health officials who evaluated Henderson found absolutely no basis to doubt his competence, and I submit that anyone watching the video recordings of this case would agree. The trial judge's unwarranted and ill-considered mental health evaluation order added over one year to the delay, during which Henderson remained incarcerated.
Together, by failing to rule on suppression motions in a timely manner and by its spurious order for a mental health evaluation of Henderson, the trial judge added over three years to the pretrial delay. I find that to be a total disregard for the liberty of an individual charged with a serious crime and unable to come up with a half-million dollars in cash for bail. Based upon those facts, I undertake a review of the right to a speedy trial.
A. The Right to a Speedy Trial
The Sixth Amendment of the United States Constitution and Section 11 of the Kentucky Constitution guarantee an accused person the right to a speedy trial.[18] As the Majority notes, our speedy trial jurisprudence is guided by *683 Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). While Barker emphasized that each case must be evaluated on its own facts, it provides a balancing test of four factors to be assessed in determining whether a defendant's right to a speedy trial was violated. Those factors are:
1. The length of delay;
2. the reason for the delay;
3. waiver, or the defendant's assertion of his right to a speedy trial and;
4. prejudice to the defendant.
Id. at 530, 92 S.Ct. 2182. The four factors must be evaluated together, with no single factor being determinative of whether a speedy trial violation has occurred. Id. at 533, 92 S.Ct. 2182.
Barker was written to complement a previous decision of the United States Supreme Court: Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In Klopfer, the Supreme Court detailed the ancient origin of the right to a speedy trial; it is a history well-worth remembering. Klopfer describes the right to a speedy as "one of the most basic rights preserved by our Constitution," id. at 226, 87 S.Ct. 988, and "as fundamental as any of the rights secured by the Sixth Amendment," id. at 223, 87 S.Ct. 988.
Klopfer reminds us that the "right [to a speedy trial] has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215);" that as written by Sir Edward Coke in Part II of his Institutes, justices in England "have not suffered the prisoner to be long detained, but at their next coming have given the prisoner full and speedy justice." Klopfer explains that "[t]o Coke, prolonged detention without trial would have been contrary to the law and custom of England; but he also believed that the delay in trial, by itself, would be an improper denial of justice. " (emphasis added). Klopfer notes:
Coke's Institutes were read in the American Colonies by virtually every student of the law. Indeed, Thomas Jefferson wrote that at the time he studied law (1762-1767), 'Coke Lyttleton was the universal elementary book of law students.' And to John Rutledge of South Carolina, the Institutes seemed 'to be almost the foundation of our law.' To Coke, in turn, Magna Carta was one of the fundamental bases of English liberty. Thus, it is not surprising that when George Mason drafted the first of the colonial bills of rights, he set forth a principle of Magna Carta, using phraseology similar to that of Coke's explication: '(I)n all capital or criminal prosecutions,' the Virginia Declaration of Rights of 1776 provided, 'a man hath a right ... to a speedy trial....' That this right was considered fundamental at this early period in our history is evidenced by its guarantee in the constitutions of several of the States of the new nation, as well as by its prominent position in the Sixth Amendment. Today, each of the 50 States guarantees the right to a speedy trial to its citizens. (Footnotes omitted).
Id. at 223-26, 87 S.Ct. 988.
What this Court has failed to recognize from history is, as Klopfer emphasizes, that the accused's liberty interests are in jeopardy during long pretrial delays. An inordinately long pretrial prosecution can subject an accused to "public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes." Id. at 222, 87 S.Ct. 988. The speedy trial right is "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities *684 that long delay will impair the ability of an accused to defend himself." United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).
In Dickey v. Florida, 398 U.S. 30, 37, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), the Court said, "The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed." "The evils at which the Clause is directed are readily identified. It is intended to spare an accused those penalties and disabilities-incompatible with the presumption of innocence-that may spring from delay in the criminal process." Id. at 41, 90 S.Ct. 1564 (Brennan, J. concurring).
In United States v. Marion, the Supreme Court described the restraints on one's liberty by arrest, whether free on bail or not, which "may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends" as the major evils protected against by the speedy trial guarantee, existing apart from actual and possible prejudice to an accused from faded memories, inaccessible witnesses, and lost evidence. 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).
"The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. " United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (emphasis added).
The Supreme Court has also recognized that the ancient right to a speedy trial also serves, not only accused individuals' interests, but also the broader, public justice interests:
The Speedy Trial Clause protects societal interests, as well as those of the accused. The public is concerned with the effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. Just as delay may impair the ability of the accused to defend himself, so it may reduce the capacity of the government to prove its case. See Ponzi v. Fessenden, 258 U.S. 254, 264, 42 S.Ct. 309, 312, 66 L.Ed. 607 (1922). Moreover, while awaiting trial, an accused who is at large may become a fugitive from justice or commit other criminal acts. And the greater the lapse of time between commission of an offense and the conviction of the offender, the less the deterrent value of his conviction.
... [Furthermore, when] the fair administration of criminal justice is imperiled [by deliberate governmental action,] [t]he Speedy Trial Clause then serves the public interest by penalizing official abuse of the criminal process and discouraging official lawlessness. See, e.g., United States v. Provoo, 17 F.R.D. 183 (D.C.Md.), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). Thus, the guarantee protects our common interest that government prosecute, not persecute, those whom it accuses of crime.
Dickey, 398 U.S. at 42-43, 90 S.Ct. 1564 (Brennan, J. concurring).
We should always assess the facts of a case against this historical backdrop and weigh them on the scales of the Barker balancing test. The venerable history of the speedy trial right should move us to a renewed focus upon the "liberty interest" protected by the speedy trial clause. "Whether delay in completing a prosecution ... amounts to an unconstitutional *685 deprivation of rights depends upon the circumstances." Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957) (citing Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905) ).
B. The Barker Factors
I believe the Barker factors are properly analyzed as follows.
1. Length of Delay
At the outset of our analysis, we must look at the length of the delay between arrest and trial. As the Majority and the Commonwealth concede, the fifty-six-month period between Henderson's arrest and his trial far exceeds the one-year threshold that establishes "presumptive prejudice" and triggers the Barker analysis.
2. Reasons for Delay
Barker next directs our attention to the reasons for the extraordinary delay between Henderson's arrest and trial. We are required to weigh the different reasons provided by the prosecution and the defense, respectively. A deliberate delay to hamper the defense weighs heavily against the government. 407 U.S. at 531, 92 S.Ct. 2182. In contrast, delay caused by the defense weighs against Henderson. Dunaway v. Commonwealth, 60 S.W.3d 563, 571 (Ky. 2001) (citing Barker, 407 U.S. at 529, 92 S.Ct. 2182 ).
The charges against Henderson were not complex; they arise from a simple and straightforward factual situation without extraordinary complications. Despite the Majority's contrary description, the pre-trial motions made by the parties were not unusually complicated to any degree that would take the case beyond the routine parameters of the court's own arraignment order aspiring to a trial with 365 days, rather than 1672 days.
More neutral and less egregious reasons for delay, such as negligence or overcrowded courts, weigh less heavily against the government but are, nevertheless, factors to weigh because the ultimate responsibility for such circumstances rests upon the government rather than with the accused. Barker, 407 U.S. at 531, 92 S.Ct. 2182. "A negligent failure by the government to ensure speedy trial is virtually as damaging to the interests protected by the right as an intentional failure; when negligence is the cause, the only interest necessarily unaffected is our common concern to prevent deliberate misuse of the criminal process by public officials." Dickey, 398 U.S. at 51-52, 90 S.Ct. 1564 (Brennan, J. concurring).
I am persuaded by my review of the pretrial proceedings that all of the significant and substantial elements of delay in this case resulted from the trial court's action and inaction. Typically, the Barker analysis involves an assignment of relative blame for the delay between the prosecution and the defense. But the Sixth Amendment constraint applies to the government, which includes the judiciary. The trial court directly controls the pretrial process. The prosecutor shares with the court the constitutional obligation to enforce the accused's right to be tried in a timely manner. See Barker, 407 U.S. at 529, 92 S.Ct. 2182 ("But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial .") (emphasis added); see also Goben, 503 S.W.3d at 906-08 (The defendant failed to show prejudice resulting from the trial court's mistake which caused a two-month delay in his trial.).
Of course, the accused is not entitled to obstruct the process and then claim he was denied a speedy trial. See *686 Dunaway, 60 S.W.3d at 571. I find no indication that Henderson obstructed or impeded the proceedings. He made routine motions, a motion seeking new trial counsel, a motion for expert witness funding, and a motion for release on bail. He also filed a pro se "Petition of Prohibition" in the Court of Appeals seeking dismissal of his indictment because he had been deprived of his right to a speedy trial. These are not complex motions that generate excessive delay.
I reject the Commonwealth's assertions that these ordinary motions caused the delay that necessitated the cancellation of five trial dates over four years. I also reject the Commonwealth's contention that rescheduling of the trial date for a full year, initiated by the trial court's sua sponte order for a competency evaluation, was the best that could be done "in light of the court's other cases."
Given the published standards of the Jefferson Circuit Court to resolve felony cases within a year, I would not indulge in the fantasy that the "other cases" blocking Henderson's pathway to a trial date had lingered on the docket longer than his. Why should I presume, as the Majority apparently does, that those "other cases" had greater urgency than Henderson's? How long had the defendant's in those cases languished in jail without trial? The Commonwealth does not bother to tell us, and the Majority does not know. By that analysis, no one in the Jefferson Circuit Court could ever prove the denial of a speedy trial because there are always "other cases" justifying each other's delay. To properly validate that claim and overcome the presumption of prejudice, the government should show us what those "other cases" are and why those litigants required more immediate attention than Henderson. I see nothing to show that any "other cases" on the trial court's docket deserved greater scheduling priority than Henderson's.
I also do not accept the Commonwealth's argument that Henderson's 2016 attempt to invoke his speedy trial rights by way of a pro se writ petition in the Court of Appeals establishes his culpability for causing further delay. Given the length of his pretrial incarceration, and the fact that five previous trial dates had come and gone, Henderson had every reason to doubt his case would be resolved on the sixth trial date. Under such circumstances, to regard his writ petition as a waiver of his speedy trial right would mean that an accused individual, incarcerated well-beyond the presumptively prejudicial one-year delay must await his eventual trial before he could seek appropriate relief for a speedy trial violation, thus further extending pretrial delay and indefinite pretrial incarceration. I reject that proposition.
It is not surprising that after three years of pretrial incarceration and several cancelled trial dates, a reasonable person would grow weary and frustrated sitting in jail with apparently no recourse. It is not unreasonable that his frustration would manifest itself in pro se motions for relief, for new representation, or for anything that might move his case toward the jury trial to which he was entitled. Henderson's motions did not keep the trial court from ruling on his suppression motions in a timely fashion; his motions did not compel the unjustifiable year-long delay for an obviously unnecessary and useless competency evaluation.
Once beyond the initial delay in the months immediately following the arraignment and the rescheduling of the first trial date, we cannot fairly attribute the excessive delay to Henderson's actions. Three years and one month of the delay lies squarely on the government, largely due to *687 the trial court's failure to timely rule on motions and the unnecessary competency evaluation and the Commonwealth's passive acquiescence.
I do not imply that the trial court intended to impede the resolution of the case, but whether it be characterized as neglect, an overcrowded docket, or simply bureaucratic indifference, the trial judge caused substantial delays which weigh against the state and tip the balance in Henderson's favor. Barker, 407 U.S. at 531, 92 S.Ct. 2182 ; Dunaway, 60 S.W.3d at 570 (quoting Zurla v. State, 109 N.M. 640, 789 P.2d 588 (1990) ("We believe that bureaucratic indifference should weigh more heavily against the state than simple case overload, particularly when the defendant has attempted to safeguard his rights.") ); see also Commonwealth v. Lutoff :
[T]he Commonwealth cannot escape blame [for a four-year delay] on the basis that the delay was occasioned by institutional failures or by the need to dispose of cases of incarcerated defendants.... [P]rosecutors must take affirmative action to bring cases to trial, particularly where, as here, the accused has pressed for an early confrontation with his accusers. After giving the Commonwealth's administrative difficulties their fair due ... we conclude that the lengthy periods of time which elapsed without disposition of this case require that the second factor in the Barker test be weighed quite heavily against the Commonwealth.
14 Mass.App.Ct. 434, 440 N.E.2d 52, 57 (1982) (internal citations and quotation marks omitted).
Waiver, or Henderson's Assertion of His Right to a Speedy Trial
The third factor of the Barker analysis is the extent to which the accused has asserted his right to a speedy trial. "While the defendant has a right to a speedy trial regardless of whether he makes a demand, assertion of the right is a factor to consider." Dunaway, 60 S.W.3d at 571 (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182 ).
The first date set for Henderson's trial was July 17, 2012. At his request, that date was cancelled. The trial was rescheduled for May 7, 2013, but in early 2013, that trial date was cancelled. Soon afterwards, on March 4, 2013, after 16 months of pretrial incarceration, Henderson filed his first demand for a speedy trial.
On November 25, 2013, after his third trial date had been cancelled and rescheduled for a date seven months later, Henderson filed his pro se motion to dismiss for a speedy trial violation. In early October 2014, after the cancellation of the fourth trial date and the scheduling of a fifth trial date for more than a year into the future, Henderson moved again for dismissal based upon a speedy trial violation. One year later, October 15, 2015, some four and one-half months after the cancellation of the fifth trial date, Henderson again demanded his right to be tried on the charges against him.
It cannot be denied that Henderson was persistently asserting his right to a speedy trial. Neither the trial court nor the prosecution could have any doubt that Henderson was invoking as forcefully as he could his right to be tried promptly.
Prejudice to Henderson
The final factor of Barker 's four-part analysis requires our consideration of the way Henderson was prejudiced because of his excessively long pretrial process. Barker teaches that "[p]rejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532, 92 S.Ct. 2182.
*688 The Barker Court identified three distinct interests that can be prejudiced by an unduly extended pretrial period: 1) the interest in preventing "oppressive pretrial incarceration;" 2) the interest in minimizing "anxiety and concern of the accused;" and 3) the interest in minimizing "the possibility that the defense will be impaired." Id. Of these three interests, Barker observed that "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id.
Henderson asserts all three forms of prejudice identified in Barker, but his reliance upon the first two forms are most compelling: the deprivation of his liberty for four and a half years and the suffering endured by the stress and anxiety of over four years in a county jail awaiting trial. His claim of prejudice in the impairment of his defense is unconvincing, and so we look first to determine the effect of that weakness upon his claim for relief.
Barker 's reference to the interest in preventing impairment of the trial defense as the "most serious" interest affected by pretrial delay has led some courts, including our own, to emphasize that point to the detriment of other interests in the prejudice prong, and indeed, to the detriment of the other three factors of the Barker balancing test. Impairment of the trial defense is, after all, only one consideration relevant to only one part of a four-part balancing test. Kentucky's constitutional jurisprudence has consistently accepted Barker 's premise that actual impairment of the accused's defense is the most serious manifestation of prejudice, but we also acknowledge that it is not the only interest adversely affected by unreasonable pretrial delay.
In Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), the Supreme Court rejected as "fundamental error" the Arizona Supreme Court's ruling that a showing of actual prejudice to the trial defense was essential to the establishment of a federal speedy trial violation. Quoting Barker, 407 U.S. at 533, 92 S.Ct. 2182, the Moore Court reiterated:
Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial:
We regard none of the four factors identified above (length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant) as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.
Moore, 414 U.S. at 26, 94 S.Ct. 188 (emphasis added).
By way of emphasizing that actual impairment of the trial defense is not an essential element of the prejudice prong of the Barker test, with the following question, Moore highlighted the Court's consideration of the accused's interest in his own liberty: "In the face of petitioner's repeated demands, did the State discharge its 'constitutional duty to make a diligent, good-faith effort to bring him (to trial)' ? " Id. (quoting Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) ).
*689 In United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the Supreme Court again reminded us that the Sixth Amendment Speedy Trial right is not "primarily intended to prevent prejudice to the defense caused by passage of time." As the Court explained, the Sixth Amendment is not needed for that function because "that interest is protected primarily by the Due Process Clause and by statutes of limitations." Id. "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." Id.
Thus, if the "prejudice by impairment of the accused's defense at trial" becomes the single factor test for a Speedy Trial Clause violation then the Sixth Amendment Guarantee becomes a mere redundancy. As noted above, the history of that ancient right establishes that it is not a mere procedural artifact, a yardstick by which we might gauge the efficiency of pretrial procedure. Like its Constitutional partner, the Right to a Public Trial, the Right to a Speedy Trial is a substantive right serving both the accused and the community. It is not a device for determining retrospectively whether the accused had a fair trial; the Due Process Clause ably serves that function. "[T]he Speedy Trial Clause's core concern is impairment of liberty." United States v. Loud Hawk, 474 U.S. 302, 312, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986).
This Court has over the years persistently refused to recognize the impairment of one's liberty as the core concern of the speedy trial right, and I submit respectfully that we once again undervalue that principle in our disposition of this case. Perhaps misconstruing Barker 's reference to preventing impairment of an accused's defense as "the most serious concern," Kentucky courts have elevated that interest to an essential requirement.[19] Nevertheless, the United States Supreme Court has consistently pointed out that actual prejudice by impairment of the defense is not a prerequisite for a speedy trial violation. Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) provides an insightful example.
Doggett was indicted on federal drug charges, but he left the country soon afterwards, apparently unaware of his indictment. A portion of his time abroad was spent in a foreign prison, and although the government was aware of his location, it made no effort to commence the prosecution. Doggett later returned to this country and settled into a normal life for six years, still unaware of his status as an indicted person. Eight and a half years after his indictment he was arrested and tried. Id. at 648-53, 112 S.Ct. 2686.
The Supreme Court applied the Barker analysis and concluded that despite Doggett's inability to show actual prejudice to his defense, and even though he was not deprived of his liberty during the extensive pretrial period, his right to a speedy trial was violated by government negligence. First, the extraordinary eight-and-a-half-year lag between his indictment and arrest *690 sufficed to establish presumptive prejudice triggering the speedy trial enquiry. Second, the delay was the fault of the government, not Doggett. Third, as the government conceded, Doggett asserted, in due course, his right to a speedy trial as soon as he could. Finally, the negligent delay between Doggett's indictment and arrest presumptively prejudiced his ability to prepare an adequate defense, even if proof of actual prejudice was wanting. Id. at 651-58, 112 S.Ct. 2686.
The only issue of substance before the Court was whether Doggett's inability to show actual prejudice doomed his claim of a speedy trial violation. Id. at 651-54, 112 S.Ct. 2686. In finding a violation of the Speedy Trial Clause, the Court held that "consideration of prejudice is not limited to the specifically demonstrable, and as [the government] concedes ... affirmative proof of particularized prejudice is not essential to every speed trial claim." Id. at 655, 112 S.Ct. 2686 (citations omitted).
Even the dissent in Doggett (Justice Thomas, joined by Justice Scalia and Chief Justice Rehnquist) acknowledged that actual prejudice to one's defense is not a prerequisite for a speedy trial violation. "We have long identified the 'major evils' against which the Speedy Trial Clause is directed as 'undue and oppressive incarceration' and the 'anxiety and concern accompanying public accusation.' The Court does not, and cannot, seriously dispute that those two concerns lie at the heart of the Clause...." 505 U.S. at 659, 112 S.Ct. 2686 (Thomas, J. dissenting) (quoting United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ). Justice Thomas further pointed out that the impairment of liberty, rather than the impairment of one's trial defense, is the essential interest protected by the Speedy Trial Clause:
[P]rejudice to the defense is not the sort of impairment of liberty against which the [Speedy Trial] Clause is directed. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Even though a defendant may be prejudiced by a pretrial delay, and even though the government may be unable to provide a valid justification for that delay, the Clause does not come into play unless the delay impairs the defendant's liberty. Inordinate delay ... may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.
505 U.S. at 661, 112 S.Ct. 2686 (Thomas, J. dissenting) (internal quotation marks and internal citations omitted) (emphasis in original).
As Justice Thomas noted, the fact that the speedy trial right is measured by the interval between the indictment and the trial, rather than the time between the crime and trial, "confirms that preventing prejudice to the defense is not one of [the Speedy Trial Clause's] independent and fundamental objectives." Id. at 662-63, 112 S.Ct. 2686. He reasoned, "If the Clause were indeed aimed at safeguarding against prejudice to the defense, then it would presumably limit all prosecutions that occur long after the criminal events at issue." Id.
Justice Souter's majority opinion in Doggett explicitly recognized "that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and *691 testimony can rarely be shown." Id. at 655, 112 S.Ct. 2686 (citation and internal quotation marks omitted).
[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.
Id. at 655-56, 112 S.Ct. 2686 (internal citation omitted). "[P]rolonged and unjustifiable delays in prosecution" cannot be condoned as it "would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." Id. at 657, 112 S.Ct. 2686.
To date, this Court has not found a case in which the presumptive prejudice of lengthy pretrial detention has tipped the Barker balance toward the finding of a speedy trial violation. For the most part, absent a showing of actual prejudice to the defense, we have not been convinced that a speedy trial violation occurred.[20] Our exclusive dependence upon that kind of prejudice as the standard for speedy trial issues seems to have occurred without closely examining its applicability under Sixth Amendment analysis.[21] As *692 Doggett, Moore, and other cases attest, that is not the standard adopted for Sixth Amendment Constitutional analysis by the United States Supreme Court.
Doggett 's disposition of the speedy trial claim was heavily influenced by governmental neglect resulting in far beyond the one-year trial delay limit deemed to be "presumptively prejudicial." The Doggett court concluded that, "when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted [by the prosecution], the defendant is entitled to relief." 505 U.S. at 658, 112 S.Ct. 2686 (internal citation and footnotes omitted).
Henderson's claim of prejudice should be examined in light of the foregoing authorities. He asserts that all three interests identified in Barker were prejudiced by his lengthy incarceration. I agree that his claim that his defense was impaired by the unnecessary delay deserves little weight. He identifies no specific instance of prejudice in the preparation of his trial defense. His generic claims of an impaired defense are insufficient to support a showing of prejudice. But impairment of the defense is not the only form of prejudice, and indeed, it is not even the most important form of prejudice wrought by excessive pretrial delay.
Henderson's most compelling claim of prejudice is to his interest in avoiding oppressive pretrial deprivation of liberty, which is the form of prejudice that the speedy trial right was historically intended to prevent. As the Supreme Court cases cited above amply attest, deprivation of liberty is the core value the Speedy Trial Clause was designed to protect. Prejudice imposed upon liberty by excessively lengthy pretrial incarceration is tangible. As Justice White's concurring opinion in Barker, joined by Justice Brennan, emphasized, the right to a speedy trial exists, not to prevent injury to the accused's defense, but to protect against the lengthy interference with his liberty while he is presumed innocent:
[I]t is appropriate to emphasize that one of the major purposes of the [speedy trial] provision is to guard against inordinate delay between public charge and trial, which, wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty. It is also true that many defendants will believe that time is on their side and will prefer to suffer whatever disadvantages delay may entail.
[F]or those who desire an early trial, these personal factors should prevail if the only countervailing considerations offered by the State are those connected with crowded dockets and prosecutorial caseloads. A defendant desiring a speedy trial, therefore, should have it within some reasonable time; and only special circumstances presenting a more pressing public need with respect to the *693 case itself should suffice to justify delay. Only if such special considerations are in the case and if they outweigh the inevitable personal prejudice resulting from delay would it be necessary to consider whether there has been or would be prejudice to the defense at trial.
407 U.S. at 537-38, 92 S.Ct. 2182.
No "special circumstances" arose to keep Henderson from having a trial within a reasonable time. The inordinate delay between his arrest and trial seriously interfered with his liberty. Commensurate with the purpose of the speedy trial right, I firmly believe that Henderson was indeed prejudiced by the lengthy, four-and-a-half-year pretrial incarceration. Prejudice of the most egregious kind was well established by Henderson's unjustified and unreasonable deprivation of liberty during the extended period of pretrial incarceration.
C. Weighing the Barker Factors
The completion of the Barker balancing process requires that we weigh together the relative significance of each of the four distinct Barker factors: the length of delay; the reason for the delay; waiver, or the defendant's assertion of his right to a speedy trial; and prejudice to the defendant.
Under any circumstances, the extraordinary fifty-six-month delay between arrest and trial is significant and is even more remarkable in light of the trial court's stated expectation of getting felony cases to trial within a year. The presumption of prejudice is strong; the inordinate length of the delay weighs heavily against the government.
The reason for the numerous delays that prevented this case from going expeditiously to trial are varied and blame is divided. Henderson is responsible for the initial delay and the rescheduling of the first trial date, which consumed the first year after his indictment. It is worth noting, however, that during the early months of pretrial incarceration prejudice is not apparent, nor is it presumed. As delay becomes protracted, the prejudicial effect correspondingly grows. Doggett, 505 U.S. at 657, 112 S.Ct. 2686. The trial could not go forward while the trial court pondered its suppression rulings for nearly two years. After that, another whole year of delay was caused by the trial court's unjustifiable decision to compel Henderson to submit to a competency evaluation. On balance, the most significant reasons for the extended delay rests with the trial court and cannot fairly be blamed upon Henderson.
Henderson asserted his right to a speedy trial by making his first demand for a speedy trial in March 2013, more than three years before he was eventually tried. He filed subsequent motions alerting the court to his demand for a speedy trial and seeking dismissal for the violation of his speedy trial right. We have absolutely no basis for concluding that Henderson waived his right to a speedy trial.
Finally, years of pretrial incarceration imposed a substantial and unjustifiable prejudice upon Henderson's interest in liberty. That prejudice cannot be discounted or ignored because he fails to substantiate his claim of prejudice to his trial defense. Weighing these four factors together lead to the necessary conclusion that Henderson's constitutional rights to a speedy trial were violated. All the Barker factors weigh in his favor.
Of course, the necessary result of that conclusion is that Henderson's case must be dismissed. Some will always find that result too distasteful to stomach, but they would have to concede then that, in their view, the right to a speedy trial belongs *694 only to the wrongly accused. A guilty person could never demonstrate sufficient prejudice to warrant the vindication of his right to a speedy trial no matter how long his pre-trial incarceration. When the constitutional right to be free from unreasonable searches and seizures is violated, and when the constitutional right to remain silent is violated, the only viable remedy is the suppression of the evidence wrongly obtained. See, e.g., Commonwealth v. Bedway, 466 S.W.3d 468, 476 (Ky. 2015) ("The result of a successful motion to suppress is the exclusion from admission at trial of any wrongfully acquired evidence."). The suppression of such evidence often results in the dismissal of criminal charges. That remedy is by some measures harsh, but it has been found to be the only means by which these important constitutional liberties can be enforced. See id.
Similarly, when the right to a speedy trial is violated, there is no remediation by turning the calendar back and restoring the violated right. The only effective enforcement mechanism to assure appropriate respect for the constitutional right to a speedy trial, and to deter its violations in other cases, is dismissal of the case.
The governments created and empowered by the Constitution are responsible for protecting the rights secured by the Constitution. See Barker, 407 U.S. at 527, 92 S.Ct. 2182. The consequences for the government's violation of those rights must be borne by the government, rather than the accused. The right to a speedy trial is as fundamental as any of the other rights secured by the Sixth Amendment. Klopfer, 386 U.S. at 223, 87 S.Ct. 988. Given the unreasonable delay attributed to the government's negligence and the prejudice to Henderson's liberty interest, Henderson is entitled to relief under the Sixth Amendment's Speedy Trial Clause and Section Eleven of the Kentucky Constitution. The only available relief is the dismissal of the charges. As stated in Barker.
The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy.
407 U.S. at 522, 92 S.Ct. 2182.
For the reasons stated above, I believe that Henderson's right to a speedy trial was violated. I would reverse his conviction and remand this case to the Jefferson Circuit Court for a prompt order of dismissal. Consequently, I dissent.
Minton, C.J., and Cunningham, J., join.

RCr 9.02 also provides that "trials of all persons in custody under arrest shall be held as promptly as reasonably possible."

Justice Thomas' dissent in Doggett, 505 U.S. 647, 660-65, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), emphasizes that the Speedy Trial Clause's concern is not prejudice to the defense, which falls at least under the Due Process Clause, but delay-related prejudice to a defendant's liberty. He views Barker 's suggestion that preventing prejudice to the defense is a fundamental and independent objective of the Clause as dictum which cannot be deemed to have survived the subsequent decisions in MacDonald and Loud Hawk.

See Brown v. Commonwealth, 934 S.W.2d 242, 249 (Ky. 1996) ("Kentucky case law indicates that '[t]he possibility of prejudice alone is not sufficient to support the position that speedy trial rights have been violated." '); Gabow v. Commonwealth, 34 S.W.3d 63, 70 (Ky. 2000) (overruled on other grounds by Crawford v. Washington, 541 U.S. 36, 60-61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ) ("Finally, although [the accused] may have been prejudiced by the mere fact that he was incarcerated during the delay ... he has not identified any prejudice with respect to his ability to present his defense at trial."); St. Clair v. Commonwealth, 140 S.W.3d 510, 529-30 (Ky. 2004) ("[I]t is clear that Appellant has failed to demonstrate prejudice from this post-extradition delay.... Appellant's specific complaints ... fail to demonstrate any identifiable prejudice from the additional delay that occurred after he was transported to Kentucky."); Bratcher v. Commonwealth, 151 S.W.3d 332, 344-45 (Ky. 2004) ("As we noted above, a long delay, while creating 'presumptive prejudice' sufficient to continue the Barker analysis, does not necessarily create real prejudice to a defendant."); Parker v. Commonwealth, 241 S.W.3d 805, 812 (Ky. 2007) ("Appellant is unable to demonstrate any prejudice in his ability to proceed in this case in presenting his version of events, even though he did frequently assert his right to a speedy trial."); Dickerson v. Commonwealth, 278 S.W.3d 145, 151-52 (Ky. 2009) ("Noticeably lacking from Dickerson's brief is any concrete allegation of prejudice. Our precedent clearly holds that speculative and generic claims are insufficient to support a claim of prejudice."); Miller v. Commonwealth, 283 S.W.3d 690, 702 (Ky. 2009) ("Appellant claims he was prejudiced by the delay because he could not call all of his witnesses. Yet, he does not give any details as to how the delay caused his witness to be unavailable. Our precedent clearly holds that speculative and generic claims are insufficient to support a claim of prejudice."); Smith v. Commonwealth, 361 S.W.3d 908, 918 (Ky. 2012) ("As we recently stated in Miller v. Commonwealth, 'speculative and generic claims are insufficient to support a claim of prejudice.' ... Accordingly, Appellant must demonstrate actual prejudice."); Goncalves v. Commonwealth, 404 S.W.3d 180, 202-03 (Ky. 2013) ("While along delay creates 'presumptive prejudice' sufficient to compel a full Barker inquiry, it does not necessarily prove that the defendant suffered actual prejudice."); Stacy v. Commonwealth, 396 S.W.3d 787, 799 (Ky. 2013) ("Appellant states that he does not have to show prejudice to his defense as a result of the delay. We disagree."); Goben v. Commonwealth, 503 S.W.3d 890, 908 (Ky. 2016) ("Goben's failure to indicate how any additional delay added much to his anxiety or impaired his defense to the August 2009 charges [along with other factors] weigh heavily ... against Goben's claim.").

Doggett has primarily been cited in our cases for its explanation that " 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." See, e.g., Bratcher, 151 S.W.3d at 334 ; Parker, 241 S.W.3d at 812.